THE TOWN OF CROOKED CREEK, Appellee, *vs.* EMMA KING *et al.* Appellants.

*Opinion filed December 21, 1911.*

1. PARTIES—*highway commissioners may sue in name of town to enjoin obstruction of ditch draining highway.* A suit to enjoin the obstruction of a ditch which drains the highway may be properly brought by the highway commissioners in the name of the town, in absence of any provision in the statute to the contrary.

2. DRAINAGE—*when a ditch carrying waters from highway is within the act of 1889.* Where a land owner constructs a ditch across his land up to the limits of a highway, and at his request the highway commissioners connect their ditch with his, so as to carry the water from the highway through the land, such ditch is within the act of 1889 concerning ditches constructed by mutual agreement and consent, and neither the land owner nor his grantee has a right to destroy the ditch against the will of commissioners.

3. SAME—*record by commissioners showing agreement to construct a ditch is not necessary.* Proof of an agreement between highway commissioners and a land owner whereby the commissioners connected a ditch with one constructed by the land owner may be made, even though there is no record made by the commissioners of such agreement. (*People* v. *Madison County,* 125 Ill. 334, distinguished.)

APPEAL from the Circuit Court of Cumberland county; the Hon. WILLIAM B. SCHOLFIELD, Judge, presiding.

JOHN J. ARNEY, FRED J. BARTLETT, and JAMES W. & EDWARD C. CRAIG, for appellants.

BREWER & BREWER, and ISLEY & WILLIAMS, for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

The bill in this case was filed in the name of the town of Crooked Creek, Cumberland county, by its commissioners of highways. It alleged that there is, and has been for more than twenty years, a public highway open for public travel north and south along the east side of the south-west quarter of the north-west quarter of section 22, in said town; that Emma King is the owner of said tract of land and that it is controlled by her and her husband, William King; that Emma King acquired title to the said land by conveyance from her father, James McBride; that while James McBride was the owner, and more than twenty years before the commencement of this suit, he entered into an agreement with the commissioners of highways of the town of Crooked Creek for the construction of a ditch from said highway upon and across said land; that there was at the time of the said agreement a ravine or draw extending in a north-easterly and south-westerly direction across the said tract of land, and in order that the adjoining lands and said highway and the McBride land might be better drained and the water diverted to the nearest natural outlet, the ditch was constructed by the mutual consent and agreement of the parties; that it has ever since been open until in April, 1910, when Emma King and William King caused its obstruction where it leaves the highway and enters Emma King's land, by filling it with dirt, posts and other material. The bill alleges that defendants had been

notified to remove said obstruction but refused to do so; that the commissioners of highways removed said obstruction once, but the defendants placed another and more effective obstruction in the ditch at the same point. The bill prays that defendants be required to remove the obstruction and that they be enjoined from preventing or obstructing the flow of water through the said ditch and from interfering in any manner with the right of complainant in said ditch or the right to drain the water through it. Defendants demurred to the bill but the demurrer was overruled, and they answered denying the construction of the ditch by agreement, as alleged in the bill, and generally denying the material averments of the bill. After the evidence was heard, defendants asked leave to amend their answer by setting up and relying on sections 13 and 14 of article 2 of the constitution of Illinois and the fifth amendment to the constitution of the United States. The amendment also set up that there was an adequate remedy at law, and that in October, 1910, the commissioners of highways constructed a new ditch upon defendants' land about three feet south of where the old ditch had been. The court refused to permit the filing of this amendment. Appellants also filed a cross-bill, alleging, among other things, that the commissioners had collected large quantities of water from contiguous lands in the ditches constructed along the public highway; that they had constructed a levee or embankment across one of the ditches, closing it up, and thereby caused the water to run and flow upon the land of appellant Emma King in greatly increased quantities, thus preventing its flow southwardly, as it naturally would do in the absence of said obstruction. The cross-bill prays that the commissioners of highways be ordered and directed to remove said embankment from said ditch and open said ditch up, and that they be enjoined from interfering with the flow of water through said ditches in said highway and from discharging any water upon the land of the cross-

complainant Emma King. The appellee demurred to the
cross-bill, a special ground of demurrer being that it was
not germane to the original bill but sought to bring before
the court other and distinct matters from those alleged in
the original bill. The court sustained the demurrer and
dismissed the cross-bill. The cause was heard upon the
original bill, answer and replication and a decree was en-
tered in accordance with the prayer of the original bill.
This appeal is prosecuted from that decree.

The exact situation of the land and the highway is
not clear from the record. The bill alleges, and the decree
finds, that the highway is on the east side of the land. The
bill also alleges that a draw extends north-east and south-
west in the land and that the water flows in a south-west-
erly direction. The answer and cross-bill allege that the
highway is on the west side of the land. We are unable
to find that any witness who testified in the case stated
where the road was located with reference to the land.
Whether the road is on the east or west side of the land
is not material to a decision of the case, but we have as-
sumed that its location is correctly described in the bill and
the decree.

The appellants contend that this suit should have been
brought by and in the name of the commissioners of high-
ways. Section 1 of article 5 of the Township Organization
act authorizes a suit at law or in equity for the settlement
of any controversy that may arise between a town and any
individual or corporation, such suit to be conducted in the
same manner and the judgment or decree to have like ef-
fect as in suits or proceedings between individuals and cor-
porations. Section 2 provides, that "in all such suits or
proceedings the town shall sue and be sued by its name,
except where town officers shall be authorized by law to
sue in their name of office for the benefit of the town."
Certain actions are authorized to be brought by the com-
missioners of highways in their name by section 74 of the

252—9

Road and Bridge act, but not actions of this character. Certain actions are authorized to be brought in the name of the town by the commissioners and certain other actions in the name of the town by the supervisor, but suits of the character here involved are not specifically included in any of those provisions. There can be no question that the bill states a case for which the town has a right of action. We find no provision of the statute as to who shall bring the suit, but the authority to do so must rest in someone. The public highways and ditches of the town are under the control and jurisdiction of the commissioners of highways, and in the absence of any provision to the contrary, the duty and authority to bring the necessary actions in the name of the town for the preservation of the public highways and ditches rest upon the commissioners.

In their briefs counsel have discussed the existence of the ditch in controversy by prescription, by dedication, and by mutual license and consent under the act of 1889. In the view we take of the case it will be unnecessary to discuss the sufficiency of the proof to establish the ditch by prescription or dedication.

The first section of the act of 1889 provides that when a drain has been theretofore or should thereafter be constructed by mutual license, consent or agreement of the owner or owners of adjoining lands, separately or jointly, so as to make a continuous line, or when the owner or owners of adjoining lands should thereafter, by mutual license, consent or agreement, be permitted to connect a drain with another already constructed, or when the owner of lower lands connects a drain to a drain constructed by the owner of upper lands, such drain shall be held to be a drain for the mutual benefit of the lands interested therein. Section 3 provides that when drains have been so constructed none of the parties interested shall fill or obstruct them except by the consent of all parties. Said section 3 further provides that the license, consent or agreement of

the parties need not be in writing but may be by parol, and may be inferred from acquiescence. By section 4 it is provided the act shall not apply to any cause pending nor deprive any party of the right he then might have to revoke any parol license, but if such right was not exercised within one year from the time the act took effect the right to revoke should be forever barred.

The proof in this case shows that in the neighborhood of twenty years ago James McBride, then the owner of the land described in the bill, constructed a ditch on his own land up to the highway. His fence between his land and the highway was a hedge, and believing the washing of the water conducted south along the highway threatened his hedge with injury or destruction, he preferred that the water be turned from the highway into the ditch he had constructed on his land. He met the commissioners on the land, and it was agreed that the commissioners should open a ditch from the highway across the fence, to connect with the ditch McBride had constructed on his land. The ditch was along the line of a depression or draw through the land. The commissioners of highways were of opinion it would be a benefit to the road, and in pursuance of the agreement constructed a ditch from the highway connecting with the ditch on the McBride land. The ditch made by the commissioners has never been closed, nor has the ditch on the McBride land until it was closed by appellants, in 1910. The action of the water changed the south-westerly part of it slightly from its original channel, and the ditch, from partially filling up, affected the rapid flow of the water. We find no evidence in the record of any work done to keep the ditch on the McBride land open, either by the commissioners or McBride or his grantee, after it was originally opened, until 1910. In April of that year Emma King's husband, William King, requested the commissioners to clean out the ditch through her field. They did so, or at least a part of it, at a cost of $10.

Afterwards the Kings caused a dam to be constructed across the ditch, so that the water would not flow through it. The effect of this was to cause the water to flow back and stand on the highway, seriously injuring it.

That the ditch from the highway was extended to and connected with the ditch on the McBride land by mutual agreement and consent is not controverted. It was not revoked, but its existence as a mutual ditch was recognized· by the request of Mrs. King's husband, in 1910, to repair it, and the action of the commissioners in doing so. This work was done on the land of Mrs. King and with road and bridge funds. If the act of 1889 is applicable to this case,—and we think it·is,—it is clear appellants had no right to destroy or .obstruct the ditch. (*Ribordy* v. *Murray,* 177 Ill. 134; *Wessels* v. *Colebank,* 174 id. 618; *Funston* v. *Hoffman,* 232 id. 360.) It is insisted, however, that the work done in 1910 was not in the line of the old ditch but was about three feet south of it. It appears, as we have before stated, that the action of the water had changed a part of the channel slightly but not materially. One of. the commissioners testified he told Mrs. King's husband about that, and asked whether he should clean out· the old channel or the new one, and King told him to do "whichever was handiest." This is not denied. But that is not material here, for the dam was not placed in the ditch where the work was done in 1910 but was placed in the old ditch. The only explanation made by King to the commissioners for his action in placing a dam in the ditch was that he did not want the water to go that way, and when asked why he requested the commissioners to clean it out, said he did not tell them to clean out a part of it and not all of it. We think, under the evidence in this case, the law authorized granting the relief prayed.

Appellants insist that it was not competent to prove the agreement between the commissioners and McBride unless some record was made by the commissioners of their action.

We do not think this question is controlled by *People* v. *Madison County,* 125 Ill. 334. That was a petition for *mandamus* to compel the board of supervisors to grant county aid to build a bridge. To authorize county aid the statute provides that it must appear a necessity exists for the construction of the bridge; that its construction would be an unreasonable burden on the town; that the cost exceeds such sum as could be raised by ordinary taxation for bridge purposes in the town in one year and that one-half the necessary funds have been provided by the town. The court held these facts must be shown by the record, as they are jurisdictional. It is true, the commissioners act by virtue of their corporate authority, and their acts, in most instances, can be proved only by the record, but the act here under consideration was not required to be made a matter of record to render it valid. (*Town of Old Town* v. *Dooley,* 81 Ill. 255.) The expense of connecting their ditch with the McBride ditch was very small, and the fact that they did agree to the connection was evidenced by their making it.

Appellants contend that the court erred in sustaining the demurrer to the cross-bill. In the view we take of this case appellants have not been prejudiced by the action of the court in sustaining the demurrer to the cross-bill.

Appellants were not prejudiced by the ruling of the court in refusing leave to amend the answer. They were deprived of no right they were entitled to in making their defense, and the court did not abuse its discretion in refusing to permit the amendment.

We find no such prejudicial error in the ruling of the court in the admission of testimony as would justify a reversal of the decree, and it is therefore affirmed.

*Decree affirmed.*