(No. 14380.—Decree affirmed.)

THOMAS J. KING *et al.* Defendants in Error, *vs.* WALTER
J. MANNING *et al.* Plaintiffs in Error.

*Opinion filed October 21, 1922.*

1. DRAINAGE—*agreement for mutual drainage may be implied
under act of 1889.* Under the Farm Drainage act of 1889, (Laws
of 1889, p. 116,) to establish a mutual drainage system it is not
necessary to show an actual agreement between the parties but such
agreement may be implied, and where the system has been in use
for over thirty years without objection and with mutual benefit, a
mutual drainage system is established under the act.

2. SAME—*Farm Drainage act of 1889 does not change common
law rule as to surface water.* The Farm Drainage act of 1889 does
not purport to change the common law rule that the owner of the
dominant heritage has the right to have the surface water falling
or coming naturally upon his land pass off upon the lower or servi-
ent heritage by natural channels, and the provision that an adja-
cent land owner cannot connect a tile on his land with a mutual
drainage system of adjoining land owners without their consent
does not prevent the construction of a tile drain or ditch on a domi-
nant heritage so that water will more readily flow in natural chan-
nels upon the servient heritage.

3. SAME—*mandatory injunction is proper to close up unlawful
connection with mutual drainage system.* Under section 2 of the
Farm Drainage act of 1889, making it unlawful for a land owner
to connect his tile with a mutual drainage system of adjoining land
owners without their consent, an injunction is a proper remedy to
prevent the construction of the unlawful connection, and where the
connection has been made the court may issue a mandatory injunc-
tion to disconnect and close up the drain, so that it will not dis-
charge water into the mutual drainage system.

4. SAME—*what does not amount to consent to a connection with
mutual drainage system.* The fact that complainants did not bring
suit for nearly a year after an unlawful connection was made with
their mutual drainage system does not amount to an implied con-
sent to the connection, where they notified the defendants very
shortly after the connection was made to disconnect and close up
their tile drain.

WRIT OF ERROR to the Circuit Court of Will county;
the Hon. DORRANCE DIBELL, Judge, presiding.

PENCE B. ORR, and FRANK G. BRUMUND, for plaintiffs in error.

JOHN H. SAVAGE, and JOHN W. DOWNEY, for defendants in error.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Defendants in error, Thomas J. King, Cora E. King and Fred B. Pilcher, filed their bill in the circuit court of Will county to enjoin plaintiffs in error, Walter J. Manning, Eli Chaplin, Wilson Spangler, commissioner of highways of Plainfield township, and the town of Plainfield, from connecting with a system of tile drains alleged to be a mutual system of drainage for the lands of Pilcher, King and Manning. The plaintiffs in error answered the bill, denying that defendants in error were entitled to any relief under their bill. The cause was heard by the chancellor and a decree was entered ordering the plaintiffs in error to disconnect the tile and to permanently close the same so as to prevent any water from flowing or passing through it into the mutual tile system running across the land of Manning. The record comes directly to this court for review by writ of error.

The record shows that defendants in error Thomas J. and Cora E. King hold the legal title to the northwest quarter of the southeast quarter and the west twenty acres of the south half of the southeast quarter of section 33, township 37, north, range 9, east of the third principal meridian, in Will county, and that defendant in error Fred B. Pilcher holds the legal title to the southwest quarter of said section. These two tracts of land are separated by a public highway running north and south on the east side of the Pilcher land and on the west side of the King land. The record also shows that plaintiff in error Walter J. Manning is the owner of the east half of the west half of section 4, township 36, north, range 9, east of the third principal meridian, and that plaintiff in error Eli Chaplin owns the north half of

the northeast quarter of the same section. The lands of Manning and Chaplin adjoin and lie directly south of the lands of Pilcher and King. The lands of the latter are separated from the Manning and Chaplin lands by a public highway running east and west. The highway which runs north and south and separates the Pilcher and King lands continues south and separates the Manning and Chaplin lands. The lands of the parties are located in each of the four corners of the cross-roads. Manning's land is lower than Pilcher's, King's and Chaplin's, and the natural flow of the surface waters falling upon the lands of Pilcher, King and Chaplin is south and west to and across the land of Manning. Although disputed by plaintiffs in error, the evidence in the record shows that about thirty-three years before the filing of this bill, Pilcher, together with Stephen Findlay, predecessor in title to the land now owned by the Kings, and Peter Book, predecessor in title to the land now owned by Manning, entered into an agreement for the mutual drainage of their lands by a system of tile drains. Pursuant to this agreement Pilcher constructed a network of tile on his land for the purpose of collecting and carrying the surface water to a point about twenty rods south of the north boundary of Manning's land, there connecting with two ten-inch tiles running south across Manning's farm. At the point of connection there were three tiles coming from Pilcher's land, which were eight, nine and twelve-inch tiles. The eight-inch tile coming from the east extended across the southeast corner of Pilcher's land and into the King land and thence ran north in the King land, with various branches of smaller tile. The nine-inch tile extended from the connection with the ten-inch tile in Manning's land north and just west of the eight-inch tile and continued north in branches of smaller tile into Pilcher's land and drained the central portion of it. The twelve-inch tile extended from the connection in Manning's land northwestwardly through Pilcher's land, this

305—3

tile branching into lines of smaller tile as it extended north-westwardly and drained the west portion of Pilcher's land. Previous to the building of these systems of tile the surface water flowing south from the King and Pilcher lands crossed the public highway and congregated in an open ditch running south through Manning's land. The two ten-inch tiles constructed on Manning's land were laid in this open ditch and continued therein south to a point about ninety rods north of the south line of Manning's land, one of them having been constructed and paid for by Pilcher and the other by Book, predecessor in title to Manning. A little later a twelve-inch tile was laid in the open ditch, connecting the south ends of the two ten-inch tiles and extending into the natural water-course south, thus enabling the owner of the Manning land to fill up the ditch and relieve himself of the surface overflow of water from the Pilcher and King lands.

The evidence concerning the construction of this mutual system of tile drains is in several instances conflicting, but the conflicting parts of the evidence are in the main concerning minor details in the construction of the system and relating to the time when the tiles were laid, who paid for them, as to whether or not each and every tile connected with the main system was authorized by all of the parties, and as to the size of the various tiles. These discrepancies are unimportant, and are accounted for by the fact that the system has been in existence for over thirty years, which time has dimmed the recollections of some of the witnesses. The evidence, does, however, clearly show that the former owners mutually agreed to the system of drainage for their lands, and even if it did not show an actual agreement between the parties, the fact that the main system has been in existence for said period without objection and with mutual benefit is sufficient to establish a mutual drainage system by implied agreement, within the meaning of the Drainage act of 1889. (Laws of 1889, p. 116.)

It is admitted by plaintiffs in error in their answer to the bill, that in the fall of 1919 Manning constructed a five-inch tile drain in the northeast part of his land about eleven rods south of the east and west highway, which drain connected with the eight-inch tile coming from the King and Pilcher lands, which connected with the ten-inch and twelve-inch tiles on Manning's land and extended in an easterly or northeasterly direction to the north and south highway, which passes through the center of section 4, separating the lands of Manning and Chaplin. They also admitted that in the fall of 1919 Chaplin applied to Manning and to the commissioner of highways, Spangler, and obtained their consent to construct a five-inch tile drain in the northwest part of his land westwardly across the north and south highway and connect it with the five-inch tile drain of Manning's where it meets the west line of the north and south highway. This connection by Chaplin on the west side of the highway is the one complained of by defendants in error and ordered to be disconnected and permanently closed by the decree of the circuit court. The claim of defendants in error is, that by allowing this connection the two ten-inch tiles forming a part of the mutual drainage system are so overloaded as to cause water to stand upon their lands and not drain off through the mutual drainage system as fast as it would if the connection from the Chaplin land had not been made. Their contention is that the land of Chaplin is much higher than their lands or the land of Manning, and that the water flows through this tile from Chaplin's land with greater force than that coming from the tiles in their lands, and the result is that the water that flows from their lands is held back until that from Chaplin's land has been carried away, thus causing water to stand upon their lands longer than it would if the Chaplin connection had not been made. This contention is borne out by the evidence in the record.

Sections 1 and 2 of the Drainage act of 1889 provide as follows:

"Sec. 1. Whenever any ditch or drain, either open or covered, has been heretofore or shall be hereafter constructed by mutual license, consent or agreement of the owner or owners of adjoining or adjacent lands, either separately or jointly, so as to make a continuous line upon, over or across the lands of said several owners, or where the owner or owners of adjoining or adjacent lands shall hereafter by mutual license, consent or agreement, be permitted to connect a drain with another already so constructed, or where the owner or owners of the lower lands has heretofore or shall hereafter connect a drain to a drain constructed by the owner or owners of the upper lands, then such drains shall be held to be a drain for the mutual benefit of all the lands so interested therein.

"Sec. 2. It shall not be lawful for either of the parties interested in said drain to authorize any other person or persons to connect therewith without the consent of all the parties interested in said drain, and all drains connecting therewith without such permission shall be unlawful, and any person interested, may by bill in chancery, compel the person or persons constructing such unlawful drain to fill the same up and in addition may have a right of action for all damages occasioned thereby."

Section 3 of the act provides against filling up drains or obstructing the flow of water therein without the consent of all the parties. Section 4 provides that after one year from the time the agreement is made for the construction on his land by a land owner of any part of such a mutual drainage system such license shall not be revoked by him.

It is clear from a reading of the foregoing sections of the act that the case now under consideration presents the exact situation the statute was intended to prevent. The act does not purport to change the common law rule that

the owner of a dominant heritage has the right to have the surface water falling or coming naturally upon his land pass off and upon the lower or servient heritage, and the owner of the dominant heritage may by ditches or drains drain his own land into the natural and usual channel even if a quantity of water thrown upon the servient heritage is thus increased. This court has frequently held that the sole purpose of the act was to enlarge the rights of drainage as they existed at common law. (*Wilson* v. *Bondurant,* 142 Ill. 645; *Cox* v. *Deverick,* 272 id. 46; *Adams* v. *Abel,* 290 id. 496.) All of the conditions provided against in the act were alleged in the bill and proved by the evidence. The bill alleged and the facts showed that the ditches in question constitute a mutual drainage system. It was also alleged and proved that the connection made by Chaplin and the road commissioner was neither authorized by defendants in error nor acquiesced in by them. It was further alleged and proved that the connection injured and impaired the mutual drainage system. Under the act their remedy was by bill in chancery to compel the persons constructing such unlawful drains to disconnect them, close them up or so use them that they will not discharge water into the mutual drainage system. Under the provisions of the statute the decree of the circuit court allowing the mandatory injunction was proper and sustained by the evidence in the record. *Adams* v. *Abel, supra.*

A number of technical objections are raised to the bill and its contents, one being that the bill alleges that only two drain tiles coming from Pilcher's land connect with the ten-inch tiles in Manning's land instead of three. It is sufficient to say that the bill contained all necessary allegations for the relief asked and granted.

It is pointed out that the closing up of Chaplin's tile extending across the highway will cause great damage to the highway and to Chaplin, and even greater damage than defendants in error will suffer by the connection. This may

be true, but the decree is in accordance with the law, and the fact that one of the parties may be road commissioner of a road district does not change the law. The decree will not prevent the road district or Chaplin and Manning from extending the five-inch tile drain of Chaplin to the natural water-course, either down the highway or across and through Manning's land, provided the water therefrom does not enter the mutual drainage system.

There is no merit in the contention that defendants in error are to be held to an implied consent to the connection enjoined because of the fact that they waited a year, or almost a year, after the connection was made to bring their suit. They notified plaintiffs in error very shortly after the connection was made to disconnect and close up the tile drain and within less than a year thereafter began this suit.

The decree of the circuit court is affirmed.

*Decree affirmed.*