Clarence E. Jones and Loraine E. Jones, Plaintiffs-Appellees, v. Joe E. Williamson and Naomi Dell Williamson, Defendants, and Roscoe Raker and Fyrne Raker, Defendants-Appellants.
Roscoe Raker and Fyrne Raker, Third-Party Plaintiffs-Appellants, v. Joe E. Williamson and Naomi Dell Williamson, Third-Party Defendants-Appellees.

Gen. No. 65–70.

Third District.

September 8, 1966.

Modified opinion October 26, 1966.

Chiperfield, Froehling & Taylor, of Canton, for appellants.

Lachlan Crissey, of Lewistown, and U. S. Collins, of Bushnell, for appellees.

STOUDER, J.

This is an appeal from a decree of the Circuit Court of Fulton County permanently enjoining Defendant, Raker, from discharging surface water from his diversion ditch onto the property of Plaintiff, Jones. Defendant, Raker, as third party Plaintiff, also appeals from the

judgment in favor of Williamson, the third-party Defendant, said judgment finding the latter not liable for damages. Petition for rehearing was filed herein and we have determined to modify the opinion upon rehearing. In view of the fact that the conclusion of this court is not changed but only its reasons assigned are modified, it was deemed unnecessary to require an answer to the petition for rehearing.

Raker and Jones owned adjoining tracts of farmland in Fulton County bounded on the east by the Spoon River, the land owned by Raker lying north of that owned by Jones. The land of the parties lying next to the river, referred to as bottom or bottom land, is low and flat. Although crops are planted on the bottom land periodic flooding from the Spoon River as well as other surface water drainage frequently damages the crops. The natural course of drainage of surface water on the bottom lands is from north to south. Surface water from bottom lands lying north of Raker's property drains onto his property and thence onto the property of Jones. In addition surface water from the hills or bluffs, located on the westerly portion of the properties, drains onto the bottom lands. Prior to 1955, surface water from the Raker land flowed onto the Jones land in three well-defined swales.

In 1953 the land now referred to as the Jones' land was owned by Simmons. Williamson rented the land from Simmons from 1953 until 1955 for a cash rent of $800 per year. In February, 1955, Simmons entered into a written contract to sell the land to Williamson for a total price of $8,000, receiving at the time of the execution of the contract a down payment of $2,000. The contract was not recorded.

In order to reduce damage to the bottom lands by overflow from the Spoon River, Raker, in conjunction with owners of property to the north and the soil con-

369

servation service, devised a plan which involved the construction of a levee and borrow pit.

In the spring of 1955, Raker, believing that Williamson was the owner of the property now owned by Jones, discussed the drainage plans with Williamson. A plan was worked out between Raker and Williamson whereby Raker would construct a diversion ditch near the bottom of the hills or bluffs on his property which would then discharge into a similar diversion ditch to be constructed by Williamson near the bottom of the hills and bluffs on his property. The surface water runoff on the hills and bluffs would thus be held against said bluffs and would finally discharge into Shoal Creek rather than upon the bottom lands. A written agreement concerning the diversion ditches was entered into between Raker and Williamson on May 31, 1955, and thereafter recorded. The written agreement also granted Williamson an option to attach to the levee by payment of $400.

The levee, borrow pit and diversion ditches were constructed in the spring and early summer of 1955. The diversion ditch constructed on the Williamson property was in 1962 described as being one foot deep at the north line of the property and increased to approximately two and one-half feet in depth at the point where it discharged into Shoal Creek. The diversion ditch had not been maintained and was not as deep in 1962 as when constructed in 1955. Williamson employed a bulldozer to construct a portion of the diversion ditch and used a plow for the remainder. The bulldozer was also employed to do some leveling of the center and east swales in his bottom land.

In September, 1955, Williamson was informed by the attorney for Simmons that merchantable title to a portion of the bottom land could not be furnished by Simmons. Because of this fact Williamson and Simmons decided to rescind the contract early in March, 1956. Under the rescission agreement which was concluded on

370

March 30, 1956, Williamson was refunded his payment of $2,000 and was allowed the 1955 crops for his bulldozing expenses. On March 30, 1956, Williamson executed and delivered a quitclaim deed to Simmons and thereafter an assignment in blank of the drainage agreement. Early in March, 1956, Jones inspected the property twice making a deposit or down payment therefore about the middle of March. Prior to his purchase of the property Jones knew of the Simmons-Williamson purchase contract but it does not appear that Jones had any conversations with either Simmons or Williamson. Jones paid $8,000 for the property receiving from Simmons a warranty deed to part of the premises and a quitclaim deed to the remainder, said deeds being dated March 30, 1956.

This action was filed in 1960 requesting that Raker be permanently enjoined from discharging water from his diversion ditch onto the Jones' property. Raker, by way of affirmative defense, claimed that the discharge of water was lawful since based on an easement. Raker filed a third-party complaint against Williamson as third-party Defendant claiming damages on account of the latter's breach of an implied or expressed warranty of title. This appeal follows from an order granting the injunction and finding against Raker on his third-party complaint.

It appears that the parties generally agree on the rights and obligations concerning surface water drainage between owners of upper and lower lands. As applied to the facts of this case it is agreed that Raker does not have any right to discharge water from his diversion ditch onto the Jones' land merely because he is the owner of the upper land.

The principal argument with which we are concerned is Raker's contention that his right to discharge surface water through the diversion ditch onto the Jones' land is based on an easement validly subsisting and enforceable against Jones, such easement existing both

by virtue of statute and common law. The claim that the Rakers are entitled to an easement was sufficiently in issue by their "Separate Affirmative Defense," filed with their answer.

Both parties appear to find some solace in the cases of Baldwin v. Pool, 74 Ill 97 and Chicago Title and Trust v. Wabash-Randolph Corp., 384 Ill 78, 51 NE2d 132. These cases, in discussing the rights of a third party derived from a contract purchaser, hold that the rights of such third party are dependent upon the contract purchaser's performance of his contract. The questions presented in the instant case do not depend merely on the actions of a contract purchaser or rights derived from such contract purchaser. Rather the actions of both contract purchaser and contract seller are involved. Consequently our inquiry must be directed to a consideration of the significance and effect of the contract seller's conduct and action.

The trial court made certain findings of fact which we believe are amply supported by the evidence and determinative of the issues. It found that Simmons had knowledge of, acquiesced in and authorized, orally, the establishment and construction of the diversion ditch, that Jones had no actual knowledge of the diversion ditch agreement between Williamson and Raker and that prior to the date of purchase Jones knew of or is chargeable with knowledge of, the diversion ditch coming onto the Simmons' land from the north and extending southerly therefrom.

■ ■ Chapter 42, § 2–8, Ill Rev Stats (1965) provides, "When a ditch . . . has been . . . constructed by mutual license, consent or agreement . . . by the owners, . . . such ditch . . . shall be deemed to be a drain . . . for the mutual benefit of all lands connected to, or protected by, it. The mutual license, consent or agreement required in this section need not be in writing, but may

372

be established by parole or inferred from the acquiescence of the parties." Although the aforementioned section of the statute became effective July 1, 1956, after the ditch had been constructed, we believe that such section is applicable to rights theretofore created or existing within its terms. Section 2–10 of the same chapter provides, "Drains . . . deemed to be for the mutual benefit of the lands connected . . . shall constitute a perpetual easement on such lands . . . ." In Fobar v. Higginson, 6 Ill App2d 29, 126 NE2d 521, the court observed that these statutory provisions enlarge drainage rights as they existed at common law, and permit creation of easements before expiration of the necessary common-law period. See also Cox v. Deverick, 272 Ill 46, 111 NE 560.

██ ██ In view of the trial court's findings concerning the actions and conduct of the contract seller it is obvious that the queston whether a contract purchaser is the owner under the terms of section 2–8, chapter 42 is not involved. Where both contract seller and purchaser are bound by the drainage agreement, all rights of ownership are involved regardless of which party may be regarded as the owner. Furthermore, as provided by said section 2–8, if the ditch is a continuous line across the adjoining lands included in the agreement it is deemed for the mutual benefit of all. Evidence of actual benefit is unnecessary. We believe that an easement exists in favor of defendant Raker under the terms of the drainage statute, and that such easement is binding upon Jones as a subsequent grantee of the contract seller under principles of common law. If a grantee at the time of purchase has no knowledge of rights which could be asserted against his grantor or has no notice of circumstances putting him upon inquiry that would have led to such knowledge then such rights are not enforceable against the grantee. Rutz v. Kehr, 143 Ill 558, 25 NE 957. It seems clear that Plaintiff in purchasing

lands burdened with the open, visible marks of an apparent drainage ditch easement in favor of an adjoining dominant estate, is chargeable with the duty of inquiry. An inquiry of either Simmons, Williamson or Raker would have revealed the agreement relative to the construction of such ditch. Accordingly we believe that the trial court's conclusion based on its own findings of fact is erroneous and that those findings of fact established an easement enforceable against Jones.

In view of our decision we do not find it necessary to consider Raker's objections to the judgment of the court below on his third-party complaint.

Finding error in the decree of the Circuit Court of Fulton County, its decree in favor of Clarence and Loraine Jones and against Roscoe and Fyrne Raker is reversed. The judgment in favor of Joe and Naomi Dell Williamson and against Roscoe and Fyrne Raker is affirmed.

Reversed in part, affirmed in part.

CORYN, P. J. and ALLOY, J., concur.