(No. 5663—)

THEODORE GIALLORETO, Claimant, *vs.* STATE OF ILLINOIS, DIVISION OF HIGHWAYS, Respondent.

*Opinion filed January 14, 1975.*

THEODORE SHARF, Attorney for Claimant.

WILLIAM J. SCOTT, Attorney General; SAUL R. WEXLER, and BONNIE G. WALT, Assistant Attorneys General, for Respondent.

BURKS, J.

This is an action for property damages. Claimant alleges that respondent's Division of Highways, in reconstructing an underground drainage sewer that crossed claimant's residential property, demolished a retaining wall, damaged his garage, and destroyed certain trees and bushes on claimant's premises, known as 705 N. First Avenue in Maywood.

Claimant's lot, about an acre in size and triangular in shape, is bounded by First Avenue on the west (approximately 360 feet), Chicago Avenue on the south (approximately 200 feet), and the DesPlaines River on the northwest border, the lot line along the river being

approximately 260 feet. Near the north end where claimant's lot comes to a point, respondent has an easement through claimant's land for its drainage sewer running approximately 20 feet underground carrying storm water from North Avenue and emptying into the DesPlaines River. The underground sewer pipe was there when claimant purchased the property some 27 years earlier.

The end of the sewer pipe facing the river had a concrete headwall or retaining wall around it prior to the construction work on the sewer done by the respondent at the time it also resurfaced First Avenue, reconstructed the highway, and installed sewers and curbs adjacent to claimant's property. This construction project commenced in September of 1968.

Claimant charges that respondent came upon his premises without notice and without his consent, demolished the retaining wall and installed another sewer, covering the same with "rap-rap" or broken pieces of concrete; that the removal of the retaining wall, which he estimates would cost $6,700 to replace, caused the adjacent land to sink and wash away, resulting in damage to his garage which would cost $5,500 to repair. Claimant also asks damages in the amount of $10,200 for the loss of 7 trees, valued at $600 each, and 60 bushes, valued at $100 each. These claims make the total ad damnum $22,400 according to the revised figures in claimant's reply brief.

Both parties, in support of their respective positions, have invoked various sections of the "Illinois Drainage Code", *Ill. Rev. Stat. Ch. 42 §1-1 et seq.*, which are applicable to the issues involved in this controversy.

Answering claimant's allegations as to the State's

entry upon his property, respondent cites the Drainage Code in support of its contention that it had a perpetual easement to enter claimant's land for the purpose of repairing or replacing the sewer:

### "Section 2-10 of the Drainage Code provides:

"Drains and levees deemed to be for the mutual benefit of the lands connected or protected shall constitute a perpetual easement on such lands and shall not be filled, obstructed, breached, or impaired in any way without the consent of the owners of all such lands." I.R.S. Ch. 42, Sec. 2-10.

### "Section 2-11 of the Drainage Code further provides:

"The owner of any land connected to or protected by such a mutual drain or levee may, at his own expense, go upon the lands upon which the drain or levee is situated and repair the drain or levee, and *he shall not be liable for damages to lands or crops unless he is negligent in performing the work.*" I.R.S. Ch. 42, §2-11. (emphasis supplied)

We hold that this statute is applicable to the facts of the instant case. First, the sewer in question was a "drain" within the meaning of the Code:

" 'Drain' includes ditch and means any water course or conduit, whether open, covered or enclosed, natural or artificial, or partly artificial, by which waters coming or falling upon lands are carried away." I.R.S. Ch. 42, §1-2(d).

Second, we hold that the sewer was a drain deemed to be for the mutual benefit of connected lands, pursuant to §2-8 of the Drainage Code which states in relevant part:

"When a ditch, covered drain or levee is, or has been, constructed by mutual license, consent or agreement, either separately or jointly, by the owners of adjoining lands so as to make a continuous line across the lands of such owners, . . . such ditch, covered drain or levee shall be deemed to be a drain or levee for the mutual benefit of all lands connected to, or protected by, it. The mutual license, consent or agreement required in this section need not be in writing, but may be established by parole or inferred from the acquiescence of the parties . . ." I.R.S. Ch. 42, §2-8.

If the drain was constructed by mutual consent, the only fact necessary to prove that the drain was for mutual benefit is that the drain ran in a continuous line through land belonging to the claimant and the State.

The Appellate Court has said:

". . . as provided by §2-8, if the ditch is a continuous line across the adjoining lands included in the agreement, it is deemed for the mutual benefit of all. Evidence of actual benefit is unnecessary. *Jones* v. *Williamson, 74 Ill. App. 2d 367, 220 N.E. 2d 645 (3d Dist. 1966) at 648.*"

Mutual consent, the statute declares, need not be in writing, but may be inferred from the acquiescence of the parties. *Ill. Rev. Stat. Ch. 42, §2-8.* There is no evidence in the record that either the claimant or his predecessor in title, ever did anything to protest the presence of the sewer on their property. Claimant cannot maintain he was without knowledge of the easement, because he admits such knowledge of the sewer at the time he bought the property, as he stated at the hearing. As the court noted in *Jones, supra:*

"It seems clear that plaintiff in purchasing lands burdened with the open, visible marks of an apparent drainage ditch easement in favor of an adjoining dominant estate, is chargeable with the duty of inquiry. *220 N.E. 2d at 648.*"

Because of claimant's acquiescence, and the statutory easement, the admitted failure of State Highway Department personnel to request permission to enter his land, which claimant dwells on in his brief, is immaterial. See also *King* v. *Manning, 305 Ill. 31, 136 N.E. 730* (1922) dealing with acquiescence in drainage system for over 30 years.

The authorities cited by claimant dealing with prescriptive easements are inapplicable, since we hold that respondent's easement is based on statute. However, one case cited by the claimant, *Camp* v. *Union Drainage Dist. No. 1, 315 Ill. App. 22, 42 N.E. 2d 327 (3d Dist. 1942)*, merits discussion.

In *Camp*, the defendant drainage district had an easement to lay an underground tile pipe across 2200 feet of plaintiff's land. Although the pipe caused a small depression in the ground, plaintiff was able to plant crops

over it. Eighteen years after the creation of the ease-
ment, the defendant entered plaintiff's land and dug a
wide, open drainage ditch where the pipe had lain. In
digging the ditch, defendant piled some 1500 cubic yards
of earth on either side, creating hugh spoil banks. Plain-
tiff was unable to farm in the area of the ditch and the
spoil banks, and access from one part of his farm to the
other was inhibited. The court held that an easement to
lay an underground tile pipe was not an easement to dig
a large open drainage ditch, and that defendant had
committed trespass in failing to secure permission to
enter plaintiff's land. *42 N.E. 2d at 329.*

In the case at bar, however, we must agree with
respondent's contention that replacement of the head-
wall with a rap rap wall was not sufficient change in the
character of the easement to bring the instant case
within the rule of *Camp.* There is strong evidence in the
record that the rip rap wall constructed by the respond-
ent was, according to the testimony of two engineers, an
improvement over the pre-existing head-wall, and a
more effective plan to deter soil erosion.

Claimant argues that, even if we hold that the sewer
is a drain for the mutual benefit of the parties, as we
have, respondent's right to repair the drain does not
include the right to demolish the head-wall and replace it
with a different type of construction, which respondent
believes is better, without claimant's consent. Claimant
argues this point by suggesting some interesting analo-
gies which, if accepted as analogous, would have little
weight on the question of monetary damages, unless the
new construction was shown to be inferior.

Moreover, claimant's argument overlooks the fact
that the headwall at the end of the cement sewer was
already virtually destroyed by the ravages of time and
erosion before respondent undertook the repair work.

Respondent's expert, Valdek Kivirist, a design engineer for the State Highway Department, testified that he conducted a field inspection before construction began. He stated that the head-wall was cracked and tilted, that it had separated from the concrete pipe outlet, and that the entire embankment area was washed out. Soil erosion was so advanced, he stated, that the entire embankment and guard rail required reconstruction. The witness stated that, because of the failure of the head-wall to prevent erosion, it was decided to use a different solution, the rip rap wall, which was built of better material for drainage purposes and was deemed to be a more effective method to stabilize the embankment.

Mr. Kivirist and respondent's resident engineer, Donald Kash, explained that the underground cement sewer was not changed nor disturbed. Its length was extended to a point closer to the river by a corrugated metal pipe inserted into the existing sewer and the joint sealed by a concrete collar. This extension was covered by the rip rap wall, and the slope down to the river was made more gradual. These witnesses both testified that, in their expert opinion, the rip rap wall was the most effective way of combatting erosion from an engineering standpoint.

Against this evidence we have weighed the testimony of claimant's expert witness, Leonard Moline, a general contractor who was not an engineer, had never put in sewer pipes, and said he did not know the distinction between a head-wall and a retaining wall.[1] He had built retaining walls for buildings in Chicago. Mr. Moline said he examined claimant's premises about three weeks before he appeared at the hearing in this matter, and stated that, in his opinion, a concrete retaining wall

would have been better than the rip rap wall which the respondent installed. He estimated that the cost of building the type of retaining wall he had in mind would be $6,700. We do not believe that Mr. Moline could have been talking about the same kind of head-wall around the sewer pipe that he said he had seen there on claimant's premises 11 or 12 years ago and which he said was "cracked" due to "settlement" even that long ago.

[1]Respondent's engineer, Mr. Kash, had explained earlier in the hearing that a head-wall, as previously existed on claimant's property, is a concrete construction at the end of a sewer pipe; that it has no function without that pipe, and served no useful purpose in keeping the river from flowing on to the land. A retaining wall, he said, is built to sustain or hold back a slope, dirt, earth or whatever it may be from collapsing into a roadway or river.

The issue is not whether the old head-wall should have been replaced, nor whether the respondent's engineers were correct in concluding that a rip rap retaining wall was the best possible method of combatting further soil erosion at this location. The issue is, whether the removal of the old head-wall caused the adjacent land to sink and wash away, resulting in damage to claimant's garage. Claimant withdrew his original allegations that his driveway was also damaged by the respondent.

We are compelled to conclude, from a careful review of the evidence, that any damage to claimant's garage due to soil erosion pre-existed the work done by State Highway Division. It is an undisputed fact that there was substantial soil erosion in the area adjacent to the garage before the repair work was started. There is no creditable evidence in the record of any significant or abnormal erosion since the project was completed.

Donald Kash, the resident engineer for the State Highway Division, testified that he visited claimant's property about two weeks before the start of construction to make a preliminary survey and he noticed that the

garage was leaning "slightly". Although claimant testified that his garage was leaning at an angle of 25 degrees at the time of the hearing, two of claimant's witnesses, George Okubo and Leonard Moline, described the angle as about ten degrees. This estimate is more consistent with the photo exhibits in the record and with the observation of the State's engineer before the respondent's repair work commenced. Claimant and his son testified that the garage was 20 years old. We also notice that paragraph 8(A) of the complaint, filed less than a year after the repair project was completed, speaks of the "gradual deterioration" of the garage and driveway.

Nor is evidence of erosion prior to September 1968, confined to respondent's witnesses. Claimant's expert witness, Leonard Moline, testified that he had inspected the head-wall 11 or 12 years before the hearing. The wall was cracked, he stated, because of settlement of the soil.

We need not question the merits of claimant's contention that, under §2-6 of the *Illinois Drainage Code*, he would be entitled to recover any actual damages to his property in this case without proof of negligence on the part of the state. We simply find that the evidence fails to prove any actual damage to claimant's garage caused by the State in performing the repair work in this case. The evidence also fails to support the claim that the old head-wall of the sewer was, in fact, a retaining wall which the claimant contends should be replaced. The old head-wall was not a retaining wall, according to the preponderance of the evidence, and it had gradually collapsed prior to the respondent's construction work. Hence, the claim for $6,700 to install a retaining wall and for $5,500 to repair the garage must be denied.

We turn now to the claim for the loss of 7 trees and

60 lilac bushes that were admittedly removed or destroyed by the respondent during construction of the rip rap wall, the sewer and the curb.

It was clearly established at the hearing that the 60 bushes in question which claimant had planted some 25 years ago, were all located on respondent's right-of-way along First Avenue and were removed by the respondent to put in a curb. Claimant protests in his brief that these bushes were located near the sewer, but this is not in accordance with his testimony at the hearing, recorded on page 22 and 23 of the record, that they were located where the curb was being installed. Respondent introduced conclusive evidence of its acquisition of a right-of-way along First Avenue consisting of a strip between 7.3 and 11.5 feet in width, east of the *new* curb.

The rules of law applicable here are stated as follows: "Growing trees and shrubs form part of the land and constitute real property". *I.L.P. Property, §10.* Title to trees or shrubs passes from the person who plants them to the owner of the estate on which they are planted at the moment of planting. *Swain Nelson & Sons v. Department of Finance, 365 Ill. 401, 6 N.E. 2d 632* (1937). When claimant planted the lilac bushes along First Avenue, he gave title to the bushes to whomever owned the land on which they were planted. Since the State owned the bushes, it had the right to remove them. Hence, the claim for loss of the bushes must be denied.

Finally, we come to the part of this claim for which we believe compensation is justified, namely, the loss of 7 large old shade trees which respondent removed from claimant's property. The record shows that these 7 trees were 50 to 75 years old and would take just as many years to grow to be replaced. They were located near the underground drainage sewer which crossed claimant's

property, and apparently were removed to prevent root damage to respondent's sewer. Such taking or damaging of private property for public use without just compensation is prohibited by the *U.S. Constitution, Amendment V* and by the *Constitution of the State of Illinois Art. I §15:*

"Private property shall not be taken or damaged for public use without just compensation."

Our finding that this constitutional provision is applicable to the taking of claimant's trees is supported by our reviewing courts in *Public Service Co.* v. *McCloskey, 235 Ill.App. 387* and *Aldis* v. *Union Elevated R.R. Co., 203 Ill. 567.* Our Supreme Court's opinion in the *Aldis* case, supra, makes it clear that the claimant may recover under the above quoted language in *§15 of Article I of the Illinois Constitution,* the same as though a condemnation proceeding had been brought to determine the damages prior to the taking of his trees, and the claimant's right is not limited to tortious acts by the State. Respondent does not contend that claimant has over estimated the value of his 7 trees at $600 each. Considering the age of the trees, we believe the amount claimed for the loss of the seven trees is fair and reasonable.

Claimant is hereby awarded property damages in the total sum of $4,200. [Four Thousand Two Hundred Dollars].