KENNETH W. SEEFELDT *et al.*, Plaintiffs-Appellees, *v.* THE CITY OF LINCOLN *et al.*, Defendants.—(THE CITY OF LINCOLN, Defendant-Appellant.)

Fourth District   No. 14604

Opinion filed February 17, 1978.—Rehearing denied March 22, 1978.

418

Warren Peters, of Lincoln, for appellant.

Woods, Bates & Dehner, of Lincoln (John W. Foltz, of counsel), for appellees.

Mr. PRESIDING JUSTICE GREEN delivered the opinion of the court:

Defendant the City of Lincoln appeals from an order of the circuit court of Logan County finding that defendant had no easement rights in, to or across the property of plaintiffs Kenneth and Nelda Seefeldt.

Plaintiffs filed a complaint for injunction against defendants the City of Lincoln and Merrill's Contractors, Inc. Merrill's did not file any responsive pleadings and does not appeal the court's order, therefore, the term "defendant" will be used to refer only to the City of Lincoln. Plaintiffs' complaint, as subsequently amended, stated that defendant claims to be the owner of a sewer allegedly 24 inches in diameter which allegedly crosses plaintiffs' property and that defendant intends to remove the sewer and replace it with a 36-inch diameter sewer in the same location. The complaint also alleged that defendant had no easement of record for the sewer and requested the court to permanently enjoin defendant from directing or contracting anyone to enter on plaintiffs' land to excavate, remove and replace the sewer.

Defendant's answer admitted that the city did not have an easement of record but denied that its actions would constitute a trespass or cause irreparable injury to plaintiffs' property. It also contained additional affirmative allegations which were stricken pursuant to plaintiffs' motion.

Defendant also filed a countercomplaint for declaratory judgment as to the rights of the parties and for a permanent injunction preventing plaintiffs from interfering with the excavation and replacement work. The

countercomplaint alleged that the sewer crossing plaintiffs' property was constructed pursuant to an ordinance of the City of Lincoln adopted in 1891 which provided for the construction of a sewer in accordance with a plat made by O. Marble. The ordinance also provided that one-half the cost of the sewer be paid by special assessment of the property "which the same may run through." Defendant alleged (and plaintiffs admitted) that the special assessment was made. The countercomplaint also alleged that the sewer in question had been in existence for 70 years and was broken in places and in a poor state of repair.

By agreement of the parties, the court held a hearing on defendant's countercomplaint.

■■ Defendant contends that the trial court erred not only in making the declaration of rights pursuant to the countercomplaint, but also in striking defendant's affirmative defenses to the complaint. Plaintiffs contend that the latter question is not before us on review. We agree. The ruling on a motion to dismiss affirmative defenses is, of course, a ruling of law. Under Supreme Court Rule 366(b)(1)(i) (Ill. Rev. Stat. 1975, ch. 110A, par. 366(b)(1)(i)) our power to review errors of law extends only to those errors affecting the order or judgment appealed. The striking of affirmative defenses on the complaint does not affect the appealed judgment on the countercomplaint.

Defendant contends that it has an easement (a) under the common law doctrine of prescription or (b) by virtue of portions of the Drainage Act of 1889, which now are sections 2—8 to 2—10 of the Illinois Drainage Code (Ill. Rev. Stat. 1975, ch. 42, pars. 2—8 to 2—10).

■■■ In order to acquire an easement by prescription, the use must be "adverse, exclusive, continuous and uninterrupted, under claim of right, with knowledge of the owner of the land and without his consent, for the statutory limitation period" (*Mueller v. Keller* (1960), 18 Ill. 2d 334, 339-40, 164 N.E.2d 28, 31). The trial court here found that defendant had not proved that there was a claim of right with the knowledge of the owners. Because the sewer was underground and not visible, it cannot in itself be notice to the landowner of its existence or notice of adverse claim or use by the city. *Murtha v. O'Heron* (1913), 178 Ill. App. 347, 354.

Defendant argues that plaintiffs and their predecessors in title had notice of the sewer by virtue of (1) the 1891 ordinance providing for the construction of a sewer connecting the sewers under 7th and 8th Streets, (2) the special assessment roll of 1891 which assessed property owners to cover the construction costs, and (3) the location of manhole covers in the alley behind and in the street in front of plaintiffs' property.

Defendant's arguments are not persuasive. Defendant did not present any evidence that the sewer described in the ordinance was the one crossing plaintiffs' property. The ordinance did not specifically describe

the location of the sewer and there was no evidence that the plat to be prepared by O. Marble was ever filed. In addition, the length and diameter of the sewer in question differs from that described in the ordinance.

Defendant argues that the special assessment roll was a public record within plaintiffs' chain of title and thus was constructive notice to all subsequent purchasers, including plaintiffs, of the existence of the sewer. There is some question, though, whether the special assessment was within plaintiffs' chain of title. In *Capper v. Poulsen* (1926), 321 Ill. 480, 482, 152 N.E. 587, 588, chain of title was defined as "the successive *conveyances* commencing with the patent from the government or some other source and including the conveyance to the one claiming title. (Emphasis added.)" The court stated, "The law charges purchasers with notice of only those conveyances in the direct line of the title they are buying," and that the appellees in that case "were chargeable with notice of what appeared in the records concerning the title to these premises, but they were not chargeable with notice of facts shown by records not in their chain of title." Clearly, the special assessment was not a conveyance and any lien it may have created would have been discharged upon payment. More importantly, there was no evidence presented to show that the property now owned by plaintiffs was ever subject to a special assessment pursuant to the 1891 ordinance. The order confirming special assessment referred to in the countercomplaint was not attached as an exhibit nor was it introduced in evidence. Plaintiffs admitted only that a special assessment was made, not that their property had been subject to such an assessment.

With respect to defendant's argument concerning the location of the manhole covers, the trial court found that they could "hardly be considered to be reasonable notice to plaintiffs of the existence of the sewer." We do not determine this finding to be contrary to the manifest weight of the evidence.

■■ For the reasons discussed above, we do not deem the trial court's finding that defendant did not establish the existence of an easement by prescription to be contrary to the manifest weight of the evidence.

Defendant also argues that it has an easement by virtue of portions of the Drainage Act of 1889, now sections 2—8 to 2—10 of the Illinois Drainage Code (Ill. Rev. Stat. 1975, ch. 42, pars. 2—8 to 2—10). Section 2—8 provides in part,

> "When a ditch, covered drain or levee is, or has been, constructed by mutual license, consent or agreement, either separately or jointly, by the owners of adjoining lands so as to make a continuous line across the lands of such owners, or when the owner of adjoining land is permitted to connect a ditch,

covered drain or levee with another already so constructed, or when the owner of lower land connects a ditch or covered drain to a ditch or covered drain constructed by the owner or owners of upper lands, or when the owner of land protected by a levee has contributed to the cost of the construction, enlargement or reconstruction of a levee upon other land, such ditch, covered drain or levee shall be deemed to be a drain or levee for the mutual benefit of all lands connected to, or protected by, it." (Ill. Rev. Stat. 1975, ch. 42, par. 2—8.)

Section 2—10 provides,

"Drains and levees deemed to be for the mutual benefit of the lands connected or protected shall constitute a perpetual easement on such lands and shall not be filled, obstructed, breached or impaired in any way without the consent of the owners of all such lands." Ill. Rev. Stat. 1975, ch. 42, par. 2—10.

Defendant argues that the Drainage Act has been applied to situations in which a public entity is one of the parties. In *Town of Crooked Creek v. King* (1911), 252 Ill. 126, 96 N.E. 905, a previous owner of a property had constructed a drainage ditch on his land up to a public highway. He and the highway commissioners then agreed that the water running off from the highway should be channelled into his ditch and the commissioners constructed a ditch from the highway to connect with the ditch constructed by the property owner. The court ruled that since the ditch was constructed by mutual agreement, the Drainage Act of 1889 was applicable and defendant could not obstruct the ditch.

Here, no evidence was presented to show any formal agreement between the City of Lincoln and plaintiffs' predecessor in title to construct a mutual benefit drain. Defendant, however, argues that a formal agreement to construct a mutual drain is not required, that mutual drains may be established by implied agreement. Section 2—8, as amended effective in 1956, now provides, "The mutual license, consent or agreement required in this section need not be in writing, but may be established by parole or inferred from the acquiescence of the parties." Prior to that amendment, the establishment of mutual drains by implied agreement was recognized in a number of cases. In *King v. Manning* (1922), 305 Ill. 31, 34, 136 N.E. 730, 731-32, the court found that the evidence showed an actual mutual agreement to construct the drainage system but added,

"[E]ven if it did not show an actual agreement between the parties, the fact that the main system has been in existence for said period without objection and with mutual benefit is sufficient to establish a mutual drainage system by implied agreement, within the meaning of the Drainage Act of 1889. (Laws of 1889, p. 116.)"

Defendant argues that the rule of implied agreement has been applied to situations in which a public corporation was a party. In *Knudson v. Neal* (1926), 320 Ill. 136, 150 N.E. 626, plaintiff had installed a sewer pipe across her property for her private use. The pipe emptied into a public sewer at one end. Plaintiff alleged that the other end of the pipe was sealed and that she did not know that the city had connected another public sewer line to her private sewer. Plaintiff sought to stop an adjoining landowner from connecting the sewer serving that property to the public sewer which emptied into plaintiff's private sewer line. The court found that plaintiff's sewer was within the terms of the Drainage Act of 1889 because her sewer had been connected at each end with the public sewer with her knowledge and she had acquiesced in the use of her sewer in connection with the public sewer. The court added,

> "If it be conceded that the evidence does not show an actual agreement between the appellant and the city to construct a system of drainage for their mutual benefit, the fact that the system has been in existence for nineteen years without objection and with mutual benefit is sufficient to establish a mutual drainage system by implied agreement. (*King v. Manning*, 305 Ill. 31.)" 320 Ill. 136, 139, 150 N.E. 626, 627.

The cases cited by defendant are clearly distinguishable from the instant case. In both *Town of Crooked Creek* and *Knudson,* the private landowner constructed a ditch or sewer on his own property to serve that property and then connected his ditch or sewer to the one constructed by the public entity. Here, there was no proof that plaintiffs' predecessor in title constructed the sewer in question. Indeed, according to defendant's argument, the City of Lincoln constructed the sewer pursuant to the 1891 city ordinance. Accordingly, the sewer in question did not meet the definition of a mutual benefit drain found in section 2—8 because it was not "constructed * * * by the owners of adjoining lands* * *."

A second requirement for finding an implied agreement is that the sewer be for the "mutual benefit" (*King v. Manning*). Here, although there was evidence that plaintiffs' property was connected to the city sewer system, there was no evidence that their property was served by the sewer in question.

■■ Another weakness in defendant's argument concerns the interpretation of the term "perpetual easement" in section 2—10. The general rule with respect to sewers and other underground drains is that because they are not visible, their existence does not give rise to a prescriptive easement unless the owner of the servient estate has actual or constructive notice of the sewer. (See *Murtha v. O'Heron* (1913), 178 Ill. App. 347.) In *Jones v. Williamson* (1966), 74 Ill. App. 2d 367, 220 N.E.2d 645, the court found that the ditch in question constituted an easement

under the terms of the Drainage Code and stated that the easement was binding on a subsequent grantee according to common law principles. The court recited the general rule,

> "If a grantee at the time of purchase has no knowledge of rights which could be asserted against his grantor or has no notice of circumstances putting him upon inquiry that would have led to such knowledge then such rights are not enforceable against the grantee. *Rutz v. Kehr*, 143 Ill. 558, 25 NE 957." 74 Ill. App. 2d 367, 373, 220 N.E.2d 645, 648.

In *Jones*, the court ruled that the subsequent grantee was chargeable with a duty of inquiry because there were "open, visible marks of an apparent drainage ditch easement in favor of an adjoining dominant estate." Thus, the language cited above was dicta, but the reference to the common law rule implies that the rules with respect to notice are applicable despite the statute's provision for a "perpetual" easement. As discussed earlier, defendant did not prove that plaintiffs had knowledge of the existence of the sewer in question.

For the reasons discussed above, we do not believe that the sewer in question was a mutual benefit drain within the meaning of section 2—8 of the Illinois Drainage Code.

Accordingly, the declaratory judgment entered on the counter-complaint is affirmed.

Affirmed.

CRAVEN and WEBBER, JJ., concur.