Howard **DRAGSTREM**, Plaintiff-Appellee,

v.

Richard E. **OBERMEYER** et al., Defendants,

United States of America, Intervenor-Appellant.

No. 75–1531.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 16, 1976.

Decided Feb. 14, 1977.

Rehearing Denied March 15, 1977.

Scott P. Crampton, Asst. Atty. Gen., Wynette J. Hewett, Atty., Tax Div., U. S. Dept. of Justice, Washington, D. C., for intervenor-appellant.

Albert Bonner Brown, P. Martin Lake, Marion, Ind., for plaintiff-appellee.

Before FAIRCHILD, Chief Circuit Judge, BAUER, Circuit Judge, and PARSONS, Chief District Judge.*

* The Hon. James B. Parsons, Chief Judge of the United States District Court for the Northern District of Illinois, is sitting by designation.

BAUER, Circuit Judge.

In this case we must determine whether a federal tax lien has priority over an unperfected security interest in proceeds deposited as an interpleaded fund. The notice of the tax lien was filed after the holder of the fund petitioned the court for authority to deposit the fund, but before the court authorized its deposit. The district court gave priority to the security interest. We reverse.

## I.

Plaintiff Dragstrem's claim to the fund is founded upon a loan to defendant Obermeyer of $11,400 plus interest. To secure the loan, Obermeyer executed a security agreement designating as collateral 500 acres of Indiana-grown popcorn and the proceeds from its sale. The security interest in the crops was never perfected because Dragstrem failed to file a financing statement in the county of the debtor's residence, as required by the Uniform Commercial Code (UCC).[1]

Dragstrem initially brought this suit against Obermeyer in an Indiana court for the amount of the debt, plus interest and attorney's fees for enforcing the obligation, and joined the Weaver Popcorn Company as a defendant in order to recover the proceeds of Obermeyer's sale of the popcorn crop to Weaver. Though it admitted owing Obermeyer $30,116.20 for the crop, Weaver refused to pay the money over to Dragstrem because it had received notice of conflicting claims to the proceeds that totaled more than the debt it owed. In order to protect itself from multiple liability, Weaver filed a motion requesting the court to join the United States and other claimants to the proceeds as parties to the action, so that it might deposit the proceeds as an interpleaded fund with the court and be dismissed from the action. After the court granted Weaver's motion to have all claimants joined as parties,[2] Weaver filed a petition on July 14, 1971 seeking authority to deposit the disputed fund with the court and asking to be dismissed as a party. Six days later, the United States filed a tax lien on the proceeds in the amount of $25,103.62.[3] About three months later, Weaver deposited the proceeds with the state court without waiting for an order responding to its petition for authority to deposit and for dismissal. Thereupon, pursuant to petition of the United States, which had earlier been dismissed as a party defendant and then granted leave to intervene, the case was removed to the United States District Court for the Northern District of Indiana. The federal court subsequently dismissed Weaver from the suit, and the case proceeded to trial.

## II.

Before discussing the district court proceedings on the merits, it will aid understanding to outline the applicable law.

■ The question of when a federal tax lien has priority over a security interest created under state law must be answered by reference to federal law. *Aquilino v. United States,* 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960); *Bjork v. United States,* 486 F.2d 934, 937 (7th Cir. 1973). The Internal Revenue Code, 26 U.S.C. §§ 6321–22, provides that a tax lien in favor of the United States arises at the time

1. Dragstrem did file a financing statement in Miami County, Indiana, the county where the crop was grown. However, this was not sufficient to perfect the security interest because financing statements must be filed both in the county where the debtor resides and in the county where the crop is grown. Burns Ind. Stat.Ann. § 26–1–9–401(1)(a).

2. None of the claimants other than Dragstrem and the United States are parties to this appeal. They either have disclaimed any interest in the fund or were determined to have claims against Obermeyer Grain, Inc., whose interest in the fund, if any, was exhausted by tax liens validly filed against the corporation.

3. The July 20 lien covered 100 percent penalties assessed under 26 U.S.C. § 6672 for Obermeyer's failure to pay over taxes withheld from employees of Obermeyer Grain, Inc. Two prior tax liens, filed on March 8, 1971 to cover $901.89 of income taxes plus penalties and interest, were awarded priority by the district court.

assessment is made on all property and rights to property belonging to a taxpayer who neglects or refuses to pay his taxes after demand. The Code also provides that the tax lien imposed

> "shall not be valid as against any . . holder of a security interest . . . until notice thereof . . . has been filed . . . ." 26 U.S.C. § 6323(a).

Thus, any "security interest" coming into existence prior to the filing of notice of a federal tax lien takes priority over the tax lien. The Code defines a "security interest" as arising

> "at such time [as] the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation. . . ." 26 U.S.C. § 6323(h)(1).

The relevant local law in this instance is Section 9–301(1)(b) of the Uniform Commercial Code, as adopted in Indiana, which states that

> "an unperfected security interest is subordinate to the rights of . . . (b) a person who becomes a lien creditor without knowledge of the security interest and before it is perfected." Burns Ind. Stat.Ann. § 26–1–9–301(1)(b).

### III.

Dragstrem argued two theories to the district court. First, looking to Section 9–301(1)(b) of the Indiana UCC, he contended that his security interest took priority over the federal tax lien because the government had obtained actual knowledge of the security interest before the filing of its tax lien, when his pleadings were served on the government in the instant case.

Alternatively, Dragstrem contended that his security interest took priority because it was protected from a subsequent judgment lien under state law because it came into the exclusive control of the court before the tax lien was filed. He reasoned that, under Indiana law, no party could become a lien creditor against property in *custodia legis*

except through the court holding the property. Thus no party could become a lien creditor against the interpleaded fund without obtaining knowledge of his outstanding security interest because the party seeking the lien would invariably obtain knowledge of the litigation involving the security interest pending before the court holding the fund.

The district court rejected Dragstrem's first theory on the ground that Section 6323(h)(1) of the Internal Revenue Code sets forth a "hypothetical judgment lien creditor test" that requires a security interest to have priority over all hypothetical subsequent judgment lien creditors in order to prime a federal tax lien. *United States v. Sterling Nat'l Bank & Trust Co.,* 360 F.Supp. 917, 925 (S.D.N.Y.1973), *modified on other grounds,* 494 F.2d 919 (2d Cir. 1974). Under this test, the government's actual knowledge of a security interest is irrelevant because the pertinent consideration is the priority of the secured creditor vis-à-vis other possible creditors, rather than vis-à-vis the government.

Applying the same test to Dragstrem's alternative argument, the district court determined that Dragstrem's security interest in the property held in *custodia legis* primed the federal tax lien because no hypothetical judgment lien creditor subsequently could have obtained a lien against the interpleaded fund without knowledge of Dragstrem's security interest.

On appeal, the government contends that the district court erred (1) in holding that a security interest unperfected under the UCC could ever take priority over a federal tax lien, (2) in finding that a competing creditor could not have obtained a subsequent judgment lien against the interpleaded fund without learning of Dragstrem's security interest, and (3) in finding that the instant fund was in fact in *custodia legis* prior to the filing of the tax lien, at a time when the fund had not actually been deposited in the court. Because we find merit in the government's second contention, we reverse.

## IV.

■ The government first argues that the language of Section 6323(h)(1) defining a security interest for purposes of the Federal Tax Lien Act as a security interest that "has become protected under local law against a subsequent judgment lien" means that a holder of such an interest must have perfected it pursuant to the UCC. 26 U.S.C. § 6323(h)(1).

This interpretation, of course, does not follow from the language of the statute, which on its face allows creditors' interests to prime federal tax liens if they are protected against subsequent judgment liens "under local law" generally, not just under the UCC.

Yet the government purports to find support for its position in the legislative history of the current version of Section 6323, passed as part of the Federal Tax Lien Act of 1966, Pub.L. No. 89–719, 80 Stat. 1125 (Nov. 2, 1966). We are referred to two excerpts from the history. First, the Senate Committee Report states generally:

"This bill is an attempt to conform the lien provisions of the internal revenue laws to the concepts developed in [the] Uniform Commercial Code." S.Rep.No. 1708, 89th Cong., 2d Sess. 2 (1966), U.S. Code Cong. & Admin.News 1966, p. 3722.

Second, the House. Committee Report states with reference to Section 6323(h)(1) that

"a security interest becomes *protected against a subsequent judgment lien on the date on which all actions required under local law to establish the priority of the security interest against such a judgment lien have been taken,* or, if later, the date on which all such actions are deemed effective, under local law, to establish such priority." H.R.Rep.No. 1884, 89th Cong., 2d Sess. 49 (1966) (emphasis added).

Neither of these excerpts, however, goes so far as to say that a creditor's interest primes a federal tax lien only if it is protected against a subsequent judgment lien by perfection under the UCC. They both are consistent with the facial meaning of the statutory text. The former excerpt suggests only that the UCC was taken into account in the drafting; it says nothing about perfection being the sole means of protecting security interests. The latter excerpt, though it speaks in terms of taking steps to protect an interest, does not specifically mention perfection under the UCC. References such as these are certainly insufficient to overcome the clear meaning of the statutory text, see *Gemsco v. Walling,* 324 U.S. 244, 260, 65 S.Ct. 605, 89 L.Ed. 921 (1945), and our review of the legislative history has revealed no other statements showing Congress' intent to provide a meaning narrower than the one given on the statute's face. *See* S.Rep.No.1708, 89th Cong., 2d Sess. (1966); H.R.Rep.No.1884, 89th Cong., 2d Sess. (1966), U.S.Code Cong. & Admin.News 1966, p. 3722; 112 Cong.Rec. 22209, 22224, 26476 (1966).[4]

Nor have the decided cases interpreted Section 6323(h)(1) in the fashion suggested by the government. The cases cited in support of its position do not hold that perfection is the only means by which a security interest may prime a federal tax lien. *United States v. Trigg,* 465 F.2d 1264, 1269–70 (8th Cir. 1972), *cert. denied,* 410 U.S. 909, 93 S.Ct. 963, 35 L.Ed.2d 270 (1973); *Fred*

---

**4.** The government also argues that the broader term "protected" was used in Section 6323 instead of "perfected" in order to cover the status of creditors, unlike the creditor here, whose interests, though unperfected under the UCC, were given priority over tax liens by other provisions of the Federal Tax Lien Act of 1966, viz., certain creditors who make advances after the tax lien filing that are protected under section 6323(c) and (d).

This argument, which suggests that the term "protected" was used in Section 6323(h) in order to be symmetrical with the other provisions of Section 6323, in fact runs counter to the government case. Given our obligation to construe terms of a statute in a uniform manner throughout, the express use of "protected" in other parts of the statute to give priority to interests that would not receive priority under the Uniform Commercial Code supports the broader interpretation of the term. See *Hotel Equities Corp. v. C. I. R.,* 546 F.2d 725 (7th Cir., 1976); *United States v. Chaussee,* 536 F.2d 637 (7th Cir., 1976).

*Kraus & Sons, Inc. v. United States,* 369 F.Supp. 1089, 1092 (N.D.Ind.1974), *aff'd,* 506 F.2d 1404 (7th Cir. 1974); *United States v. Sterling Nat'l Bank & Trust Co., supra* at 924; *Richardson v. United States,* 358 F.Supp. 994, 999 (E.D.Ark.1973). They hold merely that the unperfected security interests at issue were not protected against federal tax liens, without reaching the issue of whether the security interests could have been protected against the tax liens by other means.

Other cases support the broader interpretation that a security interest may prime a federal tax lien notwithstanding the fact that it is unperfected under the UCC. *United States v. Hunt,* 513 F.2d 129 (10th Cir. 1975); see *United States v. Ed Lusk Constr. Co.,* 504 F.2d 328 (10th Cir. 1974); *Nevada Rock & Sand Co. v. United States,* 376 F.Supp. 161 (D.Nev.1974); *Interstate Tire Co. v. United States,* 73–1 U.S.Tax Cas. ¶ 9428 (D.Ariz.1973); *L. B. Smith, Inc. v. Foley,* 341 F.Supp. 810 (W.D.N.Y.1972).

The commentators also support this broader interpretation. Plumb & Wright, *Federal Tax Liens,* 114 & n. 157 (3d ed. 1972); Young, "Priority of the Federal Tax Lien," 34 *U.Chi.L.Rev.* 723, 736 (1967); Coogan, "The Effect of the Federal Tax Lien Act of 1966 Upon Security Interests Created Under the Uniform Commercial Code," 81 *Harv.L.Rev.* 1369, 1397 (1968).

In light of the above, we conclude that a security interest need not be perfected under the UCC in order to be protected against a subsequent judgment lien under Section 6323(h)(1) of the Federal Tax Lien Act. Dragstrem's security interest thus is not primed by the federal tax lien merely because it was not perfected under the UCC.

## V.

We next must determine what kind of protection Congress contemplated a security interest need have to be "protected

under local law against a subsequent judgment lien."

Despite Congress' attempt in 1966 to conform the terms of the Federal Tax Lien Act to the terms used in the UCC, S.Rep.No. 1708, *supra* at 13; H.R.Rep.No.1884, *supra* at 1, the term "judgment lien" included in the 1966 Amendments to the Act is not found in the Code. Notwithstanding this incongruity, courts and commentators have universally concluded that "protected against a subsequent judgment lien" is equivalent to being protected against the "lien creditor" described in Section 9–301(3) of the UCC. *Nevada Rock & Sand Co. v. United States, supra* at 169; Coogan, *supra* at 1382–83; Note, "Choateness and the 1966 Federal Tax Lien Act," 42 *Minn.L.Rev.* 198, 209 (1967); see *United States v. Ed Lusk Constr. Co., supra* at 331; *United States v. Sterling Nat'l Bank & Trust Co., supra* at 925.

Having passed this first hurdle, the courts have proceeded to interpret the statute in two different ways. One line of cases has treated the United States as a "lien creditor" and then applied the Code to determine whether the unfiled tax lien primes the security interest. *United States v. Hunt, supra; United States v. Ed Lusk Constr. Co., supra; United States v. Trigg, supra.* Under these cases, when the government obtains actual knowledge of an unperfected security interest before filing the tax lien, its lien is subordinated to the UCC-created security interest in those states in which a lien creditor has priority over an unperfected security interest only if he is without actual knowledge of the security interest.[5]

The other line of cases applies a "hypothetical judgment lien creditor test" that, rather than placing the government in the shoes of a hypothetical creditor, focuses on the state law protection afforded the security interest against other hypothetical creditors. *United States v. Sterling Nat'l Bank*

---

5. In 1972 the Official Text of the Uniform Commercial Code was amended to make knowledge of a security interest on the part of a lien creditor immaterial. The 1976 Annual Pocket Part to 3 *Uniform Laws Annotated* indicates that only thirteen states have adopted the 1972 Amendments to the Uniform Commercial Code.

& Trust Co., supra at 925; Fred Kraus & Sons, Inc. v. United States, supra. Under this test, a security interest primes an unfiled federal tax lien only if the security interest is protected under local law against any hypothetical judgment lien creditor that might arise, whether or not the government has actual knowledge of the security interest.

We think the latter cases more accurately give effect to the language of Section 6323(h)(1) and the purposes underlying the Federal Tax Lien Act. As Judge Eschbach observed in his memorandum opinion in this case, it is clear that the Federal Tax Lien Act

"does not put the government in the position of a competing holder of a security interest or judgment lien, but rather describes the *legal status* which security interests must obtain under state law in order to have priority over later filed or unfiled federal tax liens." Dragstrem v. Obermeyer, Civ. No. 72 F 20, at 8 (N.D. Ind.1975) (Memorandum of Decision and Judgment Order).

We find his reasons for reaching this conclusion cogent and adopt them here:

"This conclusion is supported by an analysis of the legislative policy underlying the enactment of the Federal Tax Lien Act of 1966, the present version of 26 U.S.C.A. § 6323. The legislative history, S.Rep.1708, U.S.Code Cong. & Admin. News, 89th Cong., 2d Sess. p. 3722 (1966), makes it clear that the purpose was to bring federal tax lien law into conformity with the concepts of the Uniform Commercial Code, and thereby to permit more certainty and stability in business affairs for secured creditors. The specific legislative intent was to enable creditors to protect certain types of security interests against subsequent federal tax liens, and to do so by taking the same steps already necessary under state law to protect their interests against various other types of competing claims. This legislative policy would in no way be enhanced by a holding that a properly filed federal tax lien does not have priority over an unperfected security interest simply because the government has knowledge of the security interest before the tax lien is filed. Conversely, whatever the policy of the Uniform Commercial Code in making an exception as to priority when a lien creditor has knowledge of an unperfected security interest, this cannot apply to the tax lien situation as the government does not rely on any notice, actual or record, in making a determination to become a creditor, or to create and file a tax lien. The rationale of the new, Section 6323(a), federal priority rule centers on not disrupting the stability of business relationship where that stability already exists under state law, and not on the irrelevant fact of the existence or not of any kind of notice to the government of outstanding security interests. Indeed, one of the effects of the 1966 Act was to finally rebut the frequent secured party argument, the opposite of that made by the secured parties in the present case, that a failure to file and hence perfect a security interest under the Uniform Commercial Code ought not to subordinate the security interest to the federal lien since the government does not in any event rely on the records in becoming a creditor. See Coogan, 'The Effect of the Federal Tax Lien Act of 1966 Upon Security Interests Created Under the Uniform Commercial Code,' 81 Harv.L.Rev. 1369, 1389–90 n. 72 (1968)." Id. at 9–10.

## VI.

The government contends that the district court erred in applying the "hypothetical judgment lien creditor test" when it found that, under Indiana law, no creditor could obtain a judgment lien against property in *custodia legis* without obtaining knowledge of Dragstrem's security interest. It argues that the district court erroneously assumed that a creditor could become a lien creditor against property in *custodia legis* only by process out of the court exercising exclusive control over the property. Because we agree, we need not address the government's alternative argument that

the property was not in fact in *custodia legis* when the government filed its tax lien.

Indiana statutes and case law explicitly hold that judgment liens attach to property at the time the writ of execution is delivered to the sheriff, rather than at the time the sheriff levies on the property. Burns Ind.Stat.Ann. § 34–1–34–9; *Moss v. Jenkins,* 146 Ind. 589, 45 N.E. 789 (1897); *Durbin v. Haines,* 99 Ind. 463 (1885); *Dixon v. Duke,* 85 Ind. 434 (1882).[6] A hypothetical creditor thus could attach a judgment lien to property in *custodia legis* by obtaining an in personam judgment against a debtor in another court and delivering a writ of execution based on that judgment to a sheriff. Upon delivery, the lien would attach to the debtor's property and the creditor would become a "lien creditor" under the UCC. Burns Ind.Stat.Ann. § 26–1–9–301(3). This all could occur without the creditor learning of the action pending in the court holding the property. Pursuant to Indiana Trial Rule 24(A)(2),[7] the creditor could then intervene in the interpleader proceeding to assert his lien. The court entertaining the interpleader proceeding would then have to recognize the in personam judgment.

■ Because the rendering court could enter its judgment without infringing the jurisdiction or process of the court holding the property, cases limiting the power of courts of concurrent jurisdiction over property in *custodia legis* in another court are inapplicable. See, e. g., *State ex rel. American Fletcher Bank & Trust Co. v. Daugherty,* 258 Ind. 632, 283 N.E.2d 526, 529 (1972). The rule limiting other courts' power over property in *custodia legis* is meant to protect the process of the court first assuming jurisdiction in an in rem action; it does not preclude other courts from deciding any question that might eventually affect the property involved. See *Sherburne v. Miami Coal Co.,* 109 Ind.App. 587, 600–01, 37 N.E.2d 12 (1941); *Levi v. Hare,* 8 Ind.App. 571, 36 N.E. 369 (1894); accord, *Markham v. Allen,* 326 U.S. 490, 494, 66 S.Ct. 296, 90 L.Ed. 256 (1946); *Waterman v. Canal-Louisiana Bank Co.,* 215 U.S. 33, 44, 30 S.Ct. 10, 54 L.Ed. 80 (1909); *Barrett v. International Underwriters, Inc.,* 346 F.2d 345, 348 (7th Cir. 1965). The process of the court holding the property is affected in a situation like ours only if the property is levied upon. See *Levi v. Hare, supra.* It is not affected "where the final judgment [of the rendering court] does not undertake to interfere with the . . . possession save to the extent that the . . . court [holding the property] is bound by the judgment to recognize the right adjudicated by the . . . [rendering] court." *Markham v. Allen, supra* at 494, 66 S.Ct. at 298.

■ In the instant case it was thus possible for a hypothetical creditor to obtain a judgment lien against the property purportedly in *custodia legis* without obtaining knowledge of Dragstrem's security interest. Because Dragstrem's security interest was not protected against such a hypothetical judgment lien creditor even if the property was in *custodia legis* before the government's tax lien was filed, his security interest is not protected under the Federal Tax Lien Act and does not prime the tax lien.

---

6. The dictum in *Muniz v. United States,* 129 Ind.App. 433, 155 N.E.2d 140, 147 (1958), relied upon by Dragstrem, that a judgment obtained by a creditor does not become a lien on personal property until a levy has been made, is not only contrary to the statute and Indiana Supreme Court cases cited here, but does not follow from the case cited in its support in the opinion, *Rothchild v. State,* 200 Ind. 501, 165 N.E. 60 (1929). *Rothchild* merely held that a creditor has no judgment lien upon a debtor's property before a writ of execution is delivered to the sheriff. It nowhere mentions that a levy is required.

7. Indiana Trial Rule 24(A)(2) states:

"(A) *Intervention of right.* Upon timely motion anyone shall be permitted to intervene in an action:

\*   \*   \*   \*   \*   \*

(2) when the applicant claims an interest relating to a property, fund or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect his interest in the property, fund or transaction, unless the applicant's interest is adequately represented by existing parties."

In light of this conclusion, the district court's judgment is reversed and the case is remanded to the district court for entry of a judgment in accordance with this opinion.

REVERSED AND REMANDED.