SKIDMORE, OWINGS & MERRILL, Plaintiff-Appellant, v. PATHWAY FI-
NANCIAL, Plaintiff and Defendant-Appellee (Robert D. Talbot *et al.*,
Defendants; Robert D. Talbot *et al.*, Defendants).

Third District   No. 3—87—0750

Opinion filed August 11, 1988.

Kirkland & Ellis, of Chicago (Frank L. Winter, of counsel), for appellant.

A. Marcie Newman and Donald F. Spak, both of Arvey, Hodes, Costello & Burman, of Chicago, for appellee.

PRESIDING JUSTICE STOUDER delivered the opinion of the court:

This is a mortgage foreclosure action involving a dispute over priority of liens on real property commonly known as 9 Woodland Drive, Crete, Illinois (the premises). In the proceedings below, the circuit court of Will County held that with respect to the liens on the premises, the mortgage of Pathway Financial (Pathway) has priority over the trust deed of Skidmore, Owings and Merrill (Skidmore). Skidmore appeals from that interlocutory summary judgment.

On November 8, 1983, Philip and Rosemary Coman (the Comans) entered into a real estate contract (the contract), agreeing to sell the premises to Robert Talbot (Talbot) for $120,000. The contract contained a mortgage contingency provision for a $96,000 mortgage. Talbot executed a rider to the contract which provided that the Comans were to credit $24,000 to Talbot at the time of closing towards the purchase price of the property. Under the terms of the rider, Talbot was to repay the Comans in five annual installments of $6,657.83. A handwritten notation on the rider indicated that Talbot was to execute a loan for $24,000 with the seller's employer, Skidmore. There is no indication that either the Comans or Talbot ever informed Skidmore about either the contract or Talbot's subsequent loan negotiations with Pathway.

On November 15, 1983, Talbot executed a $96,000 loan application to Pathway. Under "Other Assets" Talbot listed a $15,000 "gift from parents" and $10,000 of "income expected from closing in next 30 days." With respect to the $15,000 gift, Talbot subsequently furnished Pathway with a gift verification form dated November 21, 1983, and executed by Walter and Helen Talbot. Talbot did not inform Pathway of either the rider to the contract or the loan negotiations with Skidmore. Pathway approved the loan.

At the closing on December 13, 1983, Pathway issued a $92,001.74 check to the Comans, the Comans executed a warranty deed to Talbot, and Talbot gave his $96,000 note and mortgage to

Pathway. Talbot paid the remainder of the purchase price—$24,000—in cash. Skidmore had wire-transferred $24,000 to Talbot's account at the Bank of Homewood on the day of the closing.

On December 15, 1983, Talbot, without giving notice to Pathway, executed a $24,000 note and trust deed to Skidmore. Skidmore's trust deed was filed with the Will County recorder's Office on December 23, 1983. Thereafter, on December 27, 1983, the deed to Talbot and Talbot's mortgage to Pathway were filed with the Will County recorder's office.

On November 12, 1985, Skidmore filed its foreclosure action against the premises. Thereafter, on November 21, 1985, Pathway filed its foreclosure action against the premises. The suits were consolidated, and Pathway and Skidmore sought summary judgment on the priority of their respective liens. The circuit court entered judgment declaring that the lien of the Pathway mortgage was superior to the lien of the Skidmore trust deed. Subsequently, the trial court entered an order preserving the lien of the Skidmore trust deed and Skidmore's redemption rights until the determination of this appeal. This appeal followed.

■ The issue in this case is whether Skidmore's recording of its trust deed before Pathway recorded the warranty deed and its mortgage gives Skidmore priority of lien on the premises. The underlying principle regarding priority of mortgage liens is that the first party to give notice of its lien on real property has the senior lien. Thus, where any party has actual or constructive notice of a prior lien, it will ordinarily take subject to that lien. (See *Life Savings & Loan Association of America v. Bryant* (1984), 125 Ill. App. 3d 1012, 1019, 467 N.E.2d 277, 282.) In this case each lender insists that it did not have actual notice of the other lender's lien. The issue, then, turns on whether either of the two lenders had constructive notice of the other lender's lien.

■ The primary means of charging any party with notice of an interest in real property is to record that interest. (See Ill. Rev. Stat. 1983, ch. 30, pars. 29, 30; *Smith v. Grubb* (1949), 402 Ill. 451, 84 N.E.2d 421.) In order for it to be effective as against subsequent purchasers and creditors, however, the recording must operate to give notice to those looking through the grantor-grantee index. (See *Landis v. Miles Homes, Inc.* (1971), 1 Ill. App. 3d 331, 335, 273 N.E.2d 153, 155 (Parties are "chargeable with knowledge of what appears in the grantor-grantee index, the legal record required to be maintained by the Recorder"); *Housing Authority v. YMCA* (1983), 112 Ill. App. 3d 65, 70, 444 N.E.2d 1138, 1142 ("It is a long standing rule in Illi-

nois that purchasers of real estate are chargeable with notice of what appears on record concerning chain of title").) Recording outside of the grantor-grantee index, as in the tract index, is recording merely for convenience. *Landis*, 1 Ill. App. 3d at 335, 273 N.E.2d at 155.

■■ ■ In this case, when Skidmore recorded its trust deed, the record owners of the premises in the grantor-grantee index were the Comans—not Talbot. Indeed, the Comans remained the record owners of the proper (until Pathway recorded the warranty deed to Talbot). Immediately after it recorded the warranty deed, which made Talbot the record owner of the property, Pathway recorded its mortgage. Having so recorded, Pathway could not expect that another lien, particularly one recorded outside of the record chain of title, would somehow gain priority.

The supreme court of Illinois, faced with a similar priority problem, found in favor of the lienors who recorded their lien simultaneously with the warranty deed. (See *Continental Investment & Loan Society v. Wood* (1897), 168 Ill. 421, 48 N.E. 221.) In that case, the vendors, who took back a purchase money mortgage on the property, waited over 16 months to record their mortgage. In the interim, the vendee executed to Continental Investment a mortgage which was duly recorded. Continental, of course, was the first to record after the vendee came into title on the property. Notwithstanding, the supreme court of Illinois held that the party which executed its mortgage simultaneously with the transfer of the warranty deed had the senior lien. (168 Ill. 421, 48 N.E. 221.) The court stated that

"[i]f there be delay in recording such deed and mortgage, and the vendee executes another mortgage of the same property to a stranger, and this is recorded before the deed to the vendee and his mortgage for the purchase money are recorded, the recording of the mortgage to such third person is not notice to the vendor, because at the time the deed to the vendee had not been recorded." 168 Ill. at 424, 48 N.E. at 221-22.

In this case, Pathway executed its mortgage simultaneously with the transfer of the warranty deed. Though Skidmore recorded first, it recorded before the recording of the warranty deed to Talbot. *Continental Investment* makes clear that such interim filing does not constitute notice to Pathway. Therefore, in view of the manner in which both parties recorded, Pathway had neither actual nor constructive notice of Skidmore's lien.

Skidmore, however, had constructive notice of Pathway's lien. The consequence of Pathway's having filed its mortgage immediately after recording of the warranty deed to Talbot was to give notice to all sub-

sequent purchasers and creditors. Anyone searching the records thereafter would find Pathway's mortgage to have been the first interest recorded after the recording of the warranty deed to Talbot. Pathway's recording, therefore, was sufficient to give notice to Skidmore that Pathway had the first mortgage lien on the premises. Having had such notice, Skidmore cannot have a lien senior to that of Pathway. Accordingly, we hold that as between Skidmore and Pathway, Pathway has the senior lien on the premises.

Affirmed.

SCOTT and WOMBACHER, JJ., concur.