In re Randolph L. BRUDER, and
Jill R. Bruder, Debtors.

Joseph D. OLSEN, Trustee, Plaintiff–
Counter–Defendant–Appellee,

v.

BANK ONE, ROCKFORD, NA, a banking
corporation, f/k/a First National Bank &
Trust Co., Defendant–Cross–Defendant–
Appellant,

and

Banc One Mortgage Corporation,
Intervenor–Cross–Defendant–
Appellant,

and

Randolph L. Bruder, Jill R. Bruder, Mott
Bros. Co., a corporation, Defendants–
Cross–Defendants–Appellees,

and

United States of America, Defendant–
Counter–Plaintiff–Cross–
Claimant–Appellee.

Nos. 94 B 52222, 95 B 51057,
and 96 C 50408.

United States District Court,
N.D. Illinois,
Western Division.

April 10, 1997.

Joseph D. Olsen, David A. Aaby, Rockford, IL, for plaintiff.

Karl F. Winkler, Oliver, Close, Worden, Winkler, Greenwald & Maier, Bernard J. Natale, Atty. at Law, Thomas A. Green, Jason H. Rock, Barrick, Switzer, Long, Balsley & Van Evera, Rockford, IL, for defendants.

Joel R. Nathan, U.S. Atty's. Office, Chicago, IL, for U.S.

*MEMORANDUM OPINION AND ORDER*

REINHARD, District Judge.

## INTRODUCTION

Appellants, Bank One, Rockford, NA ("Bank One"), and Banc One Mortgage Corporation ("Banc One Mortgage"), appeal the judgment of the bankruptcy court and its denial of their motion to reconsider entered in the adversary proceeding related to the Chapter 7 bankruptcy petitions filed by the debtors, Randolph L. Bruder and Jill R. Bruder. The court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158(a).

## BACKGROUND

The facts relevant to this appeal are not in dispute and are as follows. The Bruders were joint tenant owners of property commonly known as 5815 Chandler Drive, Rockford, Illinois ("the property"). On or about July 12, 1991, the Bruders borrowed $106,-500.00 from First National Bank & Trust Co.("First National"), a national bank operating in Rockford, Illinois. In addition to executing a note, the Bruders granted First National a mortgage in the property, which was recorded with the recorder of deeds of Winnebago County, Illinois, on June 12, 1991.

Sometime in February 1993, First National changed its name to Bank One. Although First National's interest in the note and mortgage devolved and inured to Bank One upon the name-change, *see* 12 U.S.C. § 31, no instrument of record was filed with the recorder of deeds in connection with the mortgage to reflect that Bank One was the successor to First National. On October 29, 1993, Bank One assigned the mortgage and note to Banc One Mortgage. Significantly, the assignment did not mention Bank One's prior name or the fact that it was formerly known as First National. Thus, when the assignment was recorded with the recorder of deeds on November 12, 1993, the grantor-grantee index merely reflected an assignment of the mortgage by an entity known as Bank One to Banc One Mortgage.

On March 11, 1994, a satisfaction and discharge of mortgage was executed. The document, in pertinent part, stated:

> The undersigned certifies that it is the present owner of a mortgage executed by RANDOLPH L. BRUDER AND JILL R. BRUDER to FIRST NATIONAL BANK & TRUST CO.. .... The above described mortgage is, with the note accompanying it, fully paid, satisfied, and discharged.

The document gave a full description of the property, cross-referenced the mortgage recorded earlier, and was executed by "FIRST NATIONAL BANK & TRUST CO. NKA BANK ONE, ROCKFORD, NA, by BANC ONE MORTGAGE CORPORATION, their attorney in fact." This document was recorded with the recorder of deeds on April 25, 1994. The problem with the satisfaction and release was not that it was executed by one having no authority, as Bank One had previously granted a power of attorney in favor of Banc One Mortgage to execute documents of this sort. The problem was that the satisfaction and discharge should not have been issued because the note and mortgage were not, in fact, satisfied. The foregoing errors apparently went unnoticed by Bank One and Banc One Mortgage, as no corrective documents were filed.

On August 22, 1994 and September 19, 1994, the IRS assessed Randolph Bruder for unpaid employment taxes for the third and fourth quarters of 1993 and the second quarter of 1994, respectively. On November 21, 1994, the IRS recorded a notice of federal tax lien for those assessments against Randolph Bruder with the recorder of deeds in the sum of approximately $35,000. Thereafter, on December 1, 1994, Randolph Bruder filed a voluntary petition for bankruptcy under Chapter 7 of the Bankruptcy Code.

On January 31, 1995, Mott Bros. Co. ("Mott") filed a memorandum of judgment against Jill Bruder with the recorder of deeds for approximately $28,000. On May 23, 1995, Jill Bruder filed a separate voluntary petition for bankruptcy under Chapter 7.

Joseph D. Olsen was appointed trustee in both bankruptcy cases. During the course of the bankruptcy proceedings, the trustee sought authority to sell the property free and clear of all liens. A title commitment issued prior to the sale of the property listed both the IRS's tax lien and Mott's judgment lien. The mortgage assigned to Banc One Mortgage, however, was not listed as a lien encumbering the property. Because the Bruders had listed Banc One Mortgage as holding a security interest in the property on the schedules attached to their bankruptcy petitions, the trustee and the Bruders notified the title insurance company that there may be another incumbrance on the property. Upon learning of Banc One Mortgage's potential interest in the property, the title insurance company insisted on a court order that required any and all liens to attach to the sale proceeds. On October 20, 1995, the trustee filed an adversary complaint against the Bruders, Bank One, Mott and the IRS for an order permitting a sale of the property free and clear of all liens and to determine the priority of the various liens. Thereafter, Banc One Mortgage moved to intervene as a defendant. The trustee obtained approval from the bankruptcy court to sell the property for $122,000. The IRS, Mott, Bank One and the Bruders all answered the trustee's complaint, as did Banc One Mortgage once it intervened. The IRS then filed a counterclaim against the trustee and cross-claims against all defendants, asserting that its tax lien was senior in priority to all other liens.

After the trustee, the Bruders, Mott, Bank One and Banc One Mortgage answered the IRS's counter/cross-claims, the IRS and Banc One Mortgage each filed a motion for summary judgment in which the IRS and Banc One Mortgage [1] each claimed their lien was senior in priority to all others. Mott did not oppose the IRS's motion, as its claim was only against Jill Bruder's interest in the property. Similarly, neither the trustee nor the Bruders disputed the priority of the

---

1. Although Bank One joined in Banc One Mortgage's motion to reconsider, and also appeals the ruling of the bankruptcy court, Bank One did not join in Banc One Mortgage's motion for summary judgment before the bankruptcy court. This raises a question of standing, which was addressed at oral argument and which shall be resolved later herein.

IRS's and Mott's claims to the separate half interests of Randolph and Jill Bruder in the property. All parties (excluding Bank One and Banc One Mortgage) disputed the validity of Banc One Mortgage's claim that the mortgage was effective against any of them. Thus, in an unusual alignment of the parties, Banc One Mortgage stood alone in contending that its interest was both valid and senior in priority. The bankruptcy court denied Banc One Mortgage's motion and granted the IRS's motion. The bankruptcy court found that the assignment of the note and mortgage from Bank One to Banc One Mortgage filed with the recorder of deeds was not in the chain of title. This finding, in turn, rendered the satisfaction and release effective as to all judgment lien creditors, including the IRS and Mott. This relegated Bank One and Banc One Mortgage to the status of unsecured creditors in both of the Bruders' bankruptcy proceedings.

The bankruptcy court ordered distribution of the net proceeds of the sale of the property in the following manner. The net proceeds were ordered to be divided in half. As to the first half, the trustee was ordered to remit $42,019.52 to the IRS (the amount of its tax lien, at that time), then $7,500.00 to Randolph Bruder for his homestead exemption, and to retain any remaining proceeds, subject to further order of the court. As to the second half, the trustee was ordered to remit $7,500.00 to Jill Bruder for her homestead exemption, then $28,371.63 to Mott, and to retain any remaining proceeds, subject to further order of the court.

Bank One and Banc One Mortgage filed a motion to reconsider and clarify the bankruptcy court's memorandum opinion which denied Banc One Mortgage's motion and granted the IRS's motion. Bank One's sudden reappearance in the litigation was noted by both the bankruptcy court and the other parties, see Transcript of Proceedings of October 23, 1996, pp. 4–5, 13, but the anomaly was not engaged by any of the parties or the court. For reasons stated on the record during the hearing of October 23, 1996, the

bankruptcy court denied Bank One's and Banc One Mortgage's motion to reconsider and clarify. This appeal ensued.

## DISCUSSION

A party takes an appeal from the bankruptcy court to the district court pursuant to 28 U.S.C. § 158(a) in the same manner a party in a civil proceeding takes an appeal from the district court to the court of appeals. 28 U.S.C. § 158(c). The district court, therefore, reviews the factual findings of the bankruptcy court for clear error, but reviews legal conclusions de novo. *In re Rivinius, Inc.*, 977 F.2d 1171, 1175 (7th Cir. 1992); *In re Newman*, 903 F.2d 1150, 1152 (7th Cir.1990). Bank One and Banc One Mortgage seek review of the bankruptcy court's grant and denial of motions for summary judgment. Therefore, this court reviews the judgment of the bankruptcy court de novo. *Flaherty v. Gas Research Inst.*, 31 F.3d 451, 456 (7th Cir.1994).

### A. Standing

 The court first addresses whether Bank One has standing to take this appeal.[2] None of the parties raise or address this issue in their briefs, but because it is jurisdictional, the court is obliged to address it, particularly when it emerges from the record as it does here. *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1419 n. 1 (6th Cir.1996) (Batchelder, J., concurring), *cert. denied*, —— U.S. ——, 117 S.Ct. 1082, 137 L.Ed.2d 217 (1997); *Skrzypczak v. Kauger*, 92 F.3d 1050, 1052 (10th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 957, 136 L.Ed.2d 844 (1997); *Pashaian v. Eccelston Properties, Ltd.*, 88 F.3d 77, 82 (2d Cir.1996); *FOCUS v. Allegheny County Court of Common Pleas*, 75 F.3d 834, 838 (3d Cir.1996). In order to appeal a bankruptcy court's order, a litigant must qualify as a "person aggrieved" by the order. *Depoister v. Mary M. Holloway Found.*, 36 F.3d 582, 585 (7th Cir.1994) (quoting *Matter of Andreuccetti*, 975 F.2d 413, 416 (7th Cir.1992)). A "person aggrieved" by a bankruptcy court's

---

**2.** In setting the oral argument for this appeal, the court notified the parties that they should also be

prepared to address this issue at oral argument.

order must demonstrate that the order diminishes the person's property, increases the person's burdens, or impairs the person's rights. *Id.*

■ The court has difficulty understanding how the bankruptcy court's orders diminish any property or rights of Bank One. Bank One's answer to the adversary complaint denies that it has any claim in the property and admits that it assigned its interest in the note and mortgage to Banc One Mortgage. Moreover, the uncontroverted facts adduced during the pendency of the motions for summary judgment showed that Bank One had, in fact, assigned its interest in the note and mortgage to Banc One Mortgage. Bank One did not join in Banc One Mortgage's motion, nor did it contest either of the motions for summary judgment.[3] Although Banc One Mortgage's reply brief submitted in connection with its motion contains a reference to Bank One, that reference, appearing in the "Relief Requested" portion of the brief, is cryptic at best, and relates to Banc One Mortgage's equitable mortgage argument.[4] It is not until after the bankruptcy court granted the IRS's motion and denied Banc One Mortgage's motion that Bank One resurfaced in the litigation, jointly filing a motion to reconsider and clarify with Banc One Mortgage. And as noted by the bankruptcy court, Bank One's motion to clarify could have used a little clarification itself.[5] Bank One's reappearance in the litigation served only to confuse matters, and the bankruptcy court understandably declined to fully engage the issue of whether an equitable mortgage lien exists and in which entity's favor, other than to note that even if one did, it would not change the result of its order. *See* Transcript of Proceedings of October 23, 1996, pp. 5–6.

In this court's opinion, the only way in which Bank One could be aggrieved by the bankruptcy court's order is by the bankruptcy court's conclusion that Bank One assigned its interest in the property to Banc One Mortgage in-fact; for having assigned its interest, it would not be entitled to an equitable mortgage absent setting aside the assignment. *See generally Pacini v. Regopoulos,* 281 Ill.App.3d 274, 216 Ill.Dec. 433, 439, 665 N.E.2d 493, 499 (1996); *Citizens State Bank v. United States,* 932 F.2d 490, 494–95 (6th Cir.1991). Notably, the bankruptcy court's conclusion in this regard was not a finding of fact, it was a fact that no party contested, including Bank One. Not only that, but it was admitted to by Bank One twice below—once in its answer and again when it failed to respond to the motions for summary judgment and the statements of fact filed pursuant to Local General Rules 12M and 12N. Thus, having admitted to this fact below, it is difficult to perceive of how Bank One can be an entity aggrieved by the bankruptcy court's order. Clearly, it was not, and Bank One's brief in support of this appeal is a dead give-a-way.

The relief Bank One and Banc One Mortgage request on appeal in connection with the equitable mortgage lien argument requests the court to find an equitable mortgage lien in favor of Banc One Mortgage, not Bank One. Thus, not only did Bank One never seriously contend it had an interest in this litigation when it was before the bankruptcy court, it clearly does not claim to have any interest in this appeal. Whether this is purely a lack of standing, or a blend of this and other related doctrines, see Wright, Miller & Cooper, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION 2d

---

3. Mr. Winkler entered an appearance on behalf of both Bank One and Banc One Mortgage. Strangely, the Rule 12M statement of facts submitted in connection with Banc One Mortgage's motion for summary judgment is not signed by Mr. Winkler on behalf of Banc One Mortgage, but is instead signed by Mr. Winkler on behalf of Bank One. This must have been an oversight, as Bank One never joined in Banc One Mortgage's motion nor was any relief requested in said motion on behalf of Bank One.

4. The bankruptcy court refused to consider Banc One Mortgage's argument regarding the existence of an equitable mortgage lien on the grounds that the argument was undeveloped and "raised fleetingly" in its reply brief.

5. Referring to the motion during the hearing, the bankruptcy court commented: "I must say there's not been a motion quite like it, and if the Court could file pleadings, the Court might file a motion asking Mr. Winkler to clarify his motion to clarify...." Transcript of Proceedings of October 23, 1996, p. 4.

§ 3902, Bank One has no standing in this appeal. Accordingly, the court dismisses Bank One's appeal for lack of jurisdiction.

### B. Validity/Seniority of the Competing Liens

Before reaching the heart of the issue in this case, the court must first acknowledge the over-all framework within which the court must consider the various competing liens. The court shall first address the priority of the IRS's tax lien. The priority of the IRS's lien vis-a-vis all others is a question of federal law, and the Internal Revenue Code, 26 U.S.C. §§ 6321–6323, governs the validity and priority of the lien. *Dragstrem v. Obermeyer,* 549 F.2d 20, 22–23 (7th Cir.1977). Absent provisions to the contrary, priority of federal tax liens is governed by the common-law principle that "the first in time is the first in right." *United States v. McDermott,* 507 U.S. 447, 449, 113 S.Ct. 1526, 1528, 123 L.Ed.2d 128 (1993).

Section 6323(a) provides: "[t]he lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary." No party disputes the fact that a valid tax lien under section 6321 arose against Randolph Bruder's half-interest in the property and that such lien was properly filed in compliance with section 6323(f). The disputed issue is whether Banc One Mortgage's interest in the property is a protected security interest under section 6323(a), for if it is, then its mortgage on the property takes priority over the IRS's tax lien. "Security interest" is defined as:

"any interest in property acquired by contract for purposes of securing payment or performance of an obligation or indemnifying against loss or liability. A security interest exists at any time (A) if, at such time, the property is in existence and the interest has become protected under local

law against a subsequent judgment lien arising out of an unsecured obligation, and (B) to the extent that, at such time, the holder has parted with money or money's worth."

26 U.S.C. § 6323(h)(1). In considering whether the security interest is "in existence" and "has become protected under local law," the court looks to Illinois law and examines whether, under Illinois law, Banc One Mortgage's interest was protected against any "hypothetical judgment lien creditor" that might arise, regardless of whether the IRS had actual notice of the security interest. *Dragstrem,* 549 F.2d at 26; *see also In re Haas,* 31 F.3d 1081, 1087 (11th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 2578, 132 L.Ed.2d 828 (1995). Thus, if any subsequent judgment lien creditor could prevail over Banc One Mortgage, then the IRS's lien will be found to be senior in priority. Resolution of this issue will also resolve the priority of Mott's lien vis-a-vis Banc One Mortgage's interest, but for now, the court limits its discussion to the IRS's lien.

Illinois is a race-notice jurisdiction, which means that the first to record, without notice, has superior rights to those who record later. 765 ILCS 5/30; *Davis v. United States,* 705 F.Supp. 446, 450 (C.D.Ill.1989). If, for example "O," the owner of real property, simultaneously executes mortgages on his property to both "A" and "B," and A and B are not aware of each other's interests, the first one to record the mortgage has the senior lien. The reason for this is that the first to give notice of its lien on real property has the senior lien, and, by recording the mortgage with the recorder of deeds, the individual filing that mortgage is said to give "constructive notice" of its lien to all others. *See Skidmore, Owings & Merrill v. Pathway Fin.,* 173 Ill.App.3d 512, 123 Ill.Dec. 395, 397, 527 N.E.2d 1033, 1035 (1988).[6] Constructive notice, however, arises only when the encumbrances or conveyances are in the direct

---

**6.** Of course, if A had actual notice of B's interest, A could not obtain a senior lien merely by beating B to the recorder's office. *See id.* Because the IRS is given the status of a hypothetical judgment lien creditor without actual notice, the court need not concern itself with the effect of

actual notice under the Illinois Conveyance Act, 765 ILCS 5/30. Likewise, actual notice does not play any role with respect to Mott's lien either, as no party claims that Mott had actual notice of the various transactions which took place in this case.

chain of title. *Estate of Welliver v. Alberts,* 278 Ill.App.3d 1028, 215 Ill.Dec. 580, 586, 663 N.E.2d 1094, 1100, *appeal denied,* 168 Ill.2d 587, 219 Ill.Dec. 562, 671 N.E.2d 729 (1996); *Hillblom v. Ivancsits,* 76 Ill.App.3d 306, 32 Ill.Dec. 172, 175, 395 N.E.2d 119, 122 (1979). Thus, contrary to Banc One Mortgage's contentions, an instrument will not operate to give constructive notice "to the world" merely because it is filed with the recorder of deeds—it must also be in the chain of title to the property. *Glen Ellyn Sav. and Loan Ass'n v. State Bank of Geneva,* 65 Ill.App.3d 916, 22 Ill.Dec. 569, 575, 382 N.E.2d 1267, 1273 (1978).

 Chain of title is defined as "the successive conveyances commencing with the patent from the government or some other source and including the conveyance to the one claiming title." *Seefeldt v. City of Lincoln,* 57 Ill.App.3d 417, 14 Ill.Dec. 954, 956, 373 N.E.2d 85, 87 (1978) (quoting *Capper v. Poulsen,* 321 Ill. 480, 152 N.E. 587, 588 (1926)). An instrument which is recorded, but which cannot be traced back to the original grant because some previous instrument connecting it to the chain of title is unrecorded, lies outside the chain of title and is said to be a "wild" or "stray" instrument. *See Exchange Nat'l Bank of Chicago v. Lawndale Nat'l Bank of Chicago,* 41 Ill.2d 316, 319, 243 N.E.2d 193, 196 (1968); *see also* Gregory M. Power, Case Note, Killam v. Texas Oil & Gas Corp.: *A Portrait of Uncertainty for Title Examiners and Mineral Interest Owners,* 45 Ark.L.Rev. 679, 685–86 (1992). The chain of title can be traced using the grantor-grantee index maintained by the local recorder of deeds, and in order for a recorded instrument to be effective as against subsequent purchasers and creditors, it must operate to give notice to those looking through the grantor-grantee index. *Skidmore,* 123 Ill.Dec. at 396, 527 N.E.2d at 1034. A wild or stray instrument which merely appears in other indices, such as the tract index, does not operate to give constructive notice. *Id.* at 397, 527 N.E.2d at 1035.

An example of these principles at work can be illustrated by the following example:

0, the owner of record of certain real property, conveys the property by deed to A for value. A does not record his deed. A then conveys the property to B for value, who does not record either. O, who never liked A to begin with, and being dissatisfied with the price the property fetched when he sold it to A, conveys the same property by deed to C for value. B records his deed, after which C records his deed. Neither B nor C have actual notice of each other's interest. Who has good title?

Under Illinois law, C has good title, notwithstanding the fact that B purchased the property first and recorded his deed first. B's deed is a wild deed; it cannot be traced back to 0 without A's deed being recorded, and, because A did not record his deed, B's deed lies outside the chain of title.

In this case, the Bruders, owners of the property as joint tenants, conveyed a mortgage to "First National Bank & Trust Co." in return for a loan. First National recorded its interest. First National then changed its name to "Bank One, Rockford, NA," and, under its new name only, recorded an instrument assigning its interest in the property to "Banc One Mortgage Corporation." Thereafter, an instrument executed by Banc One Mortgage acting as attorney-in-fact for "First National Bank & Trust Co., n/k/a Bank One, Rockford, NA," was recorded, releasing the mortgage. After the release was recorded, the IRS and Mott filed their liens. To further add to the mix, the instrument releasing the mortgage was executed by mistake and was intended to release a mortgage on a different property and for a different debtor.

The bankruptcy court held that Bank One's assignment to Banc One Mortgage was outside the chain of title because there was no prior conveyance or instrument of record linking Bank One to First National. The bankruptcy court then held that the satisfaction and discharge filed by First National, in effect, released the mortgage. These findings led the bankruptcy court to conclude that the assignment was ineffective against creditors and subsequent purchasers and that the mortgage no longer existed. This,

in turn, meant that Banc One Mortgage was no longer a secured creditor and that the IRS's and Mott's liens were superior to all others. On appeal, Banc One Mortgage challenges these findings by offering three main arguments. The court addresses each argument in turn.

Banc One Mortgage's first argument is that, as a matter of contract, the mortgage is still valid and is prime as against all other lien holders. The argument is outlined as follows. First National held the note and mortgage, and these interests automatically inured to Bank One pursuant to federal law upon First National changing its name to Bank One. Bank One then assigned its interest to Banc One Mortgage. Having already assigned its interest by contract to Banc One Mortgage, Bank One's satisfaction and discharge had no effect because it had no interest to release. Therefore, there is still a valid mortgage and Banc One Mortgage's lien is prime.

■ This argument is a red herring. The priority of the liens in this case is not determined merely by reference to contract law, but by reference to the Illinois Conveyance Act, of which *notice* and *recording* are the key inquiries. Although the assignment was recorded, it was recorded outside the chain of title. Just like "B" in the last example, no prior instrument of record existed giving any interest in the property to the entity known as Bank One, and the assignment itself failed to recite Bank One's former name. Therefore, the assignment was a wild instrument that did not operate to give constructive notice to subsequent judgment lien creditors. This, in turn, made the satisfaction and discharge executed by First National n/k/a Bank One to be the only other instrument of record within the chain of title, and when it was recorded, it had the effect of releasing the mortgage. That is, while it may not have released the Bruder's personal obligation to pay the debt, as the mortgage was no longer, in fact, Bank One's interest to release, the satisfaction and discharge had the effect of releasing Banc One Mortgage's security interest in the property as to other creditors and lien holders. Thus, the bankruptcy

court was correct in finding Banc One Mortgage to be an unsecured creditor.

Banc One Mortgage's second argument is that its mortgage interest cannot be construed to be void because a standard title search of the property would have disclosed its interest, or that it would have at least put the title examiner on "inquiry notice." Banc One Mortgage contends that a standard title search would have revealed all documents relating to the property, including the assignment and the power of attorney executed by Bank One. All of this, it claims, would have put a reasonable person on notice that Banc One Mortgage, and not Bank One, was the holder of the mortgage at the time the satisfaction and discharge was executed.

There are several problems with this argument, not the least of which is that the authority cited by Banc One Mortgage for these propositions belies its contention that a standard title search would have disclosed its interest. Quoting portions of *Ward on Title Examination*, IICLE (1986), Banc One Mortgage states in its brief:

> [T]he examiner " ... is bound to examine those documents which are executed ..." during the period of ownership. They are not bound to examine those executed prior to ownership or after the last conveyance from ownership. (pp. 11–11, 11–12)

The quoted portion of *Ward on Title Examination*, this time including the language omitted by Banc One Mortgage, reads:

> *Therefore, the title searcher is bound to examine those documents which are executed by owners of real estate during the period of time when they own the real estate. The title searcher is not bound to examine, however, documents executed by persons having no apparent interest of record in the real estate, including documents executed by an owner prior to the time he became the owner or subsequent to the time he conveyed title. These instruments are outside the chain of title and are said to be "wild" instruments.* [emphasis added to omitted portions]

Banc One Mortgage's argument (and its selective use of authority) ignores the significance of chain of title. Wild instruments do not operate to give constructive notice under

Illinois law, see *Estate of Welliver*, 215 Ill. Dec. at 586, 663 N.E.2d at 1100; *Hillblom*, 32 Ill.Dec. at 175, 395 N.E.2d at 122; *Glen Ellyn Sav. and Loan Assoc.*, 22 Ill.Dec. at 575, 382 N.E.2d at 1273, and even if the proper analysis was whether the interest would be disclosed during a "standard title search," that search would not encompass wild instruments.

 Banc One Mortgage also relies on the doctrine of inquiry notice. Inquiry notice is when one has notice of facts which would put a prudent person on inquiry. *Miller v. Bullington*, 381 Ill. 238, 44 N.E.2d 850, 852 (1942). Once one is put on inquiry notice, that person is chargeable with knowledge of other facts that might have been discovered by diligent inquiry. *Id.; Pacemaker Food Stores, Inc. v. Seventh Mont Corp.*, 117 Ill. App.3d 636, 72 Ill.Dec. 931, 938, 453 N.E.2d 806, 813 (1983). A finding of inquiry notice is one of fact, *Pelfresne v. Village of Williams Bay*, 917 F.2d 1017, 1022 (7th Cir.1991), and the bankruptcy court made no such finding. In fact, the bankruptcy court did not even address the issue. Thus, this court conducts a de novo review to determine whether the bankruptcy court erred in not making such a finding.

At the outset, the court observes that this aspect of Banc One Mortgage's argument was not raised below until its reply brief filed in support of its motion for summary judgment (perhaps accounting for the bankruptcy court's failure to address it), and even then, Banc One Mortgage only advanced it as against the trustee, not the IRS or Mott. On appeal, Banc One Mortgage argues the presence of inquiry notice but does not specify as to which party it applies. Instead of attempting to untangle Banc One Mortgage's argument in this respect, it is simpler for the court to address this argument as it relates to all three, even though there is good reason to find this argument waived.

As a matter of federal law, *see Dragstrem*, 549 F.2d at 26, the IRS has the status of a hypothetical judgment lien creditor without actual notice. The trustee likewise has the

same status, see 11 U.S.C. § 544(a)(1) and (3), and Mott is, in actuality, a judgment lien creditor without actual notice. The only possible way any of these three could be put on inquiry notice, therefore, is if there are matters of record which would put them on inquiry notice—that is, only those matters of which they are held to be on constructive notice can be used to determine whether they were put on inquiry notice. For reasons stated earlier, the only documents for which these parties are deemed to have knowledge of based on constructive notice are the mortgage and the satisfaction and discharge releasing the mortgage. The assignment, a wild instrument, cannot operate (based merely on constructive notice) to put any of these parties on inquiry notice because they are not deemed to have knowledge of it.[7] Without knowledge of the assignment, there is no conceivable way a party could be put on inquiry notice that the satisfaction and discharge was ineffective because Bank One had already assigned its interest in the property. Because inquiry notice is an impossibility in this case, as a matter of law, the bankruptcy court committed no error in not making a finding on this issue. For this reason, the court rejects Banc One Mortgage's contention based on the doctrine of inquiry notice.

This leaves Banc One Mortgage's argument pertaining to an equitable mortgage lien. In its opinion, the bankruptcy court refused to consider this argument because it was "raised fleetingly" by Banc One Mortgage in its reply brief and it was "undeveloped." On appeal, Banc One Mortgage does not challenge the bankruptcy court's refusal to consider the argument at that time. Moreover, while it appears from the record that the bankruptcy court did not preclude Banc One Mortgage from later raising the issue, see Transcript of Proceedings of October 23, 1996, pp. 14–15, it does not appear that Banc One Mortgage pursued the matter any further below. To the extent Banc One Mortgage seeks to use this argument to assert priority over the IRS's and Mott's liens,

---

**7.** To be clear, this court is not presented with the situation of a party having *actual* knowledge of the wild instrument. Nevertheless, it is doubtful that a wild instrument could put a party on inquiry notice. *See* Power, *supra*, 45 Ark.L.Rev. at 689.

it fails because, as this court has already determined, the satisfaction and release operated to render Banc One Mortgage an unsecured creditor. To the extent Banc One Mortgage seeks to use this argument in any other respect, it is waived for purposes of this appeal.[8] *See In re Mary Dunn,* No. 95 C 50305, 1996 WL 210020, at *2 (N.D.Ill. Apr.10, 1996) (holding issue not pressed below in bankruptcy court is waived on appeal to district court)

Although the court has confined most of its discussion thus far to the priority of the IRS's lien, the same analysis of Illinois law applies to the priority of Mott's lien. Because, under Illinois law, Banc One Mortgage is an unsecured creditor and Mott had no notice of Banc One Mortgage's interest in the property, Banc One Mortgage cannot prevail against Mott in attempting to assert a valid and senior lien.

## CONCLUSION

For the foregoing reasons, the judgment of the bankruptcy court is affirmed.

See also 183 B.R. 531, 188 B.R. 565, and 194 B.R. 1009.

8. Whether Banc One Mortgage could have used this theory to step ahead of the rest of the unsecured creditors or used it to somehow invalidate the Bruders' homestead exemptions is not clear.

What is clear, however, is that Banc One Mortgage had the opportunity to develop this avenue and chose not to below.